**Ronald S. MILLER, Plaintiff,**

v.

**Jeff RICH and National Transportation Safety Board, Defendants.**

**No. CV 87–0183–AHS(Bx).**

United States District Court,
C.D. California.

June 20, 1989.

---

Arthur Wasserman, Van Nuys, Cal., for plaintiff.

Robert C. Bonner, U.S. Atty., and Frederick M. Brosio, Jr., Asst. U.S. Atty., Chief, Civ. Div., and James R. Sullivan, Asst. U.S. Atty., Los Angeles, Cal., for defendants.

STOTLER, District Judge.

## I

## FINDINGS OF FACT

1. On January 1, 1987 a civil North American T–28C[1] single-engine aircraft ("North American N9022Y") crashed in an open field south of the Van Nuys Airport, Los Angeles, California. Pretrial Conference Order, Section V, para. 1.

2. One of the two occupants of North American N9022Y was killed, the other sustained minor injuries. *Id.*, para. 2.

3. North American N9022Y crashed after its single engine failed totally. The cause of the engine failure has not yet been determined. *Id.*, para. 3.

4. North American N9022Y's engine was a Wright R–1820–86, a nine-cylinder radial engine of 1820 cubic-inches displacement. *Id.*, para. 4.

5. Plaintiff Ronald S. Miller had an ownership interest in North American N9022Y at the time of the accident. *Id.*, para. 5.

6. Defendant National Transportation Safety Board is required by law to investigate all civil aircraft accidents in the United States to determine and publicly report the facts, conditions, circumstances, and probable cause of such accidents. *Id.*, para. 6.

7. The NTSB issues safety recommendations to government agencies and private organizations to reduce the likelihood of recurrence of transportation accidents. *Id.*, para. 7.

8. The NTSB is empowered by law to examine and test to the extent necessary any civil aircraft, aircraft engine, propeller, appliance, or property aboard an aircraft involved in an accident in air commerce. *Id.*, para. 8.

9. The Secretary of Transportation and his representative are entitled by law to participate in NTSB investigations of aircraft accidents. *Id.*, para. 9.

10. Defendant Jeffery R. Rich was and is an NTSB Air Safety Investigator and the designated NTSB Investigator–In–Charge of the NTSB field investigation of the North American N9022Y accident. Defendant Rich is assigned to the NTSB Los Angeles Regional Office. At the time of the accident, the NTSB Los Angeles Regional Office was known as the NTSB Los Angeles Field Office. *Id.*, para. 10.

---

1. The T–28 was a two-place propeller-driven military training aircraft used after World War II. The T–28C was the version used by the United States Navy. Pretrial Conference Order at 2.

11. Defendant Rich, as Investigator–In–Charge, is responsible for organizing, conducting, and controlling the NTSB field investigation. *Id.*, para. 11.

12. The Investigator–In–Charge may designate "parties" to "participate" in its aircraft accident investigations as those terms are used in 49 C.F.R. § 831.11. *Id.*, para. 12.

13. "Parties" to an NTSB field investigation are limited to those persons, government agencies, companies, and associations whose employees, functions, activities, or products were involved in the accident and who can provide suitable qualified technical personnel to actively assist in the field investigation. *Id.*, para. 13.

14. The designation of "parties" is at the discretion of the Investigator–In–Charge. The Investigator–In–Charge's determination is made on a case-by-case basis. *Id.*, para. 14.

15. The Investigator–In–Charge's decision whether to designate any "party" to an NTSB accident investigation is based upon the Investigator–In–Charge's assessment of whether such participation will assist the NTSB investigation. *Id.*, para. 15.

16. "Parties" assist the NTSB in its investigations under the direction of the Investigator–In–Charge, who may remove them if they fail to perform their duties, or if they conduct themselves in a manner prejudicial to the investigation. *Id.*, para. 16.

17. Defendants have custody of North American N9022Y's engine and propeller for disassembly and further detailed examination. Defendants do not retain control over any of the other portions of the aircraft wreckage, which have been released to plaintiff. *Id.*, para. 17.

18. Defendants have selected the Northrop Institute of Technology as the site for their disassembly and further examination of North American N9022Y's engine and related components. The Northrop Institute of Technology has all of the factory recommended tools and equipment to properly conduct the examination. *Id.*, para. 18.

19. Plaintiff does not object to the engine examination being conducted at the Northrop Institute of Technology. *Id.*, para. 19.

20. NTSB powerplant engineer Paul L. Baker has been assigned to conduct the engine examination. Mr. Baker has extensive experience with the Wright R–1820 type engine. *Id.*, para. 20.

21. Northrop Institute instructor James Hilley will assist in the physical disassembly of the engine. Mr. Hilley has extensive experience with the Wright R–1820 type engine. *Id.*, para. 21.

22. FAA inspector Don Skunberg will participate in the engine examination. Mr. Skunberg has extensive experience with the Wright R–1820 type engine. *Id.*, para. 22.

23. Defendants do not require any additional technical assistance to thoroughly conduct the NTSB's disassembly and examination of North American N9022Y's engine. *Id.*, para. 23.

24. Defendants have denied and continue to deny plaintiff's request to observe and memorialize their disassembly and examination of North American N9022Y's engine. *Id.*, para. 24.

25. NTSB regulation 49 C.F.R. § 831.12(a) restricts "access" to aircraft wreckage to NTSB personnel and persons authorized by the NTSB to participate in the NTSB's investigation, examination or testing. *Id.*, para. 25.

26. NTSB regulations do not make any provision for allowing persons to merely observe an NTSB investigation, examination or testing. *Id.*, para. 26.

27. Permitting plaintiff, or his agent, to observe the NTSB's engine examination would grant plaintiff access to the aircraft wreckage.

28. Plaintiff, or his agent, are not entitled to "access" to North American N9022Y's engine as "access" is used in 49 C.F.R. § 831.12. *Id.*, para. 27.

29. North American N9022Y's engine had been overhauled shortly before the accident and only had approximately 10 hours

operating time when it failed. *Id.*, para. 28.

30. Plaintiff has a personal interest in the results of the NTSB engine examination because plaintiff has claims or potential claims against the company which overhauled North American N9022Y's engine. *Id.*, para. 29.

31. Plaintiff has a personal interest in the results of the engine examination because plaintiff is a defendant in wrongful death litigation arising from the accident. *Id.*, para. 30.

32. Plaintiff has a personal interest in learning the cause of the North American N9022Y accident. *Id.*, para. 31.

33. If plaintiff were allowed to observe the NTSB's disassembly and examination of the engine, plaintiff would be the only person present with a personal interest in the results. *Id.*, para. 32.

34. It is customary for the authorized participants to openly and candidly discuss their ideas and observations throughout an NTSB engine examination. It is essential to the NTSB investigation that the participants' ideas and observations be freely communicated to one another during the examination.

35. It would not be an abuse of discretion to conclude that plaintiff's presence during the NTSB engine examination would seriously inhibit the free exchange of ideas and information among the authorized participants.

36. Any impediment to free discussion and the immediate flow of information among the authorized participants in the NTSB engine examination would interfere with the NTSB investigation. *Id.*, para. 33.

37. Plaintiff's personal interest in the NTSB examination results make it likely that information plaintiff obtained from the examination would be released in an unauthorized manner contrary to NTSB regulations. *See* 49 C.F.R. § 831.13.

38. The NTSB Investigation Manual–Aircraft Accidents and Incidents (NTSB Order 6200.1A) provision covering parties to NTSB field investigations, formerly page 4–4, has been revised, effective June 27, 1988. As revised, this Manual provision emphasizes that the NTSB's decision whether to grant party status to anyone other than the FAA is based solely upon NTSB requirements and not the needs or interests of individuals. As revised, this Manual provision does not make any reference to the aircraft owner. *Id.*, para. 34.

39. "Observer" status is addressed in the NTSB Investigation Manual which states in part:

> The investigator-in-charge may designate properly accredited members of aeronautical organizations, current operators of like equipment, designated military personnel or representatives of a foreign government, as observers to the investigation. . . . Persons not qualified in the above categories shall not be granted observer status during the investigation phase of the inquiry.

NTSB Investigation Manual. *Id.*, para. 35.

40. "Observer" status is limited by the NTSB Investigation Manual:

> Personnel so accepted [as observers] will be on the headquarters staff and will be given factual information on a 'need to know basis'. . . . Although observers may be authorized attendance to the initial organizational and final 'wind up' meetings, they will not be authorized to attend any progress meetings which the IIC might convene. The observers will be given factual information by the IIC.

NTSB Investigation Manual. *Id.*, para. 36.

41. The NTSB Investigation Manual provides for "observers" only on investigations conducted by the NTSB headquarters staff. The NTSB only has headquarters staff on major investigations conducted by its Washington, D.C. based Investigators–In–Charge. *Id.*, para. 37.

42. Defendant Rich, as Investigator–In–Charge, exercises the authority of the Director, Bureau of Field Operations, to designate parties to NTSB investigations. *Id.*, para. 38. The Director, Bureau of Field Operations, has directed all NTSB field office personnel, including defendant Rich, that no observers are allowed on NTSB field office accident investigations.

43. Even if the NTSB Investigation Manual permitted observers on investigations conducted by field officer personnel, plaintiff does not meet any of the Investigation Manual requirements for observer status.

44. Because plaintiff does not meet any of the Investigation Manual requirements for observer status, the Investigation Manual prohibits plaintiff from having observer status.

45. "Observer" status as described in the Investigation Manual does not allow an observer access to aircraft wreckage in any event. *Id.*, para. 39.

46. NTSB regulations state:
The operator of an aircraft shall file a report on Board Form 6120.1 (OMB No. 3147–005) or Board Form 7120.2 (OMB No. 3147–0001) within 10 days after an accident ... (footnote omitted).
49 C.F.R. § 830.15. *Id.*, para. 40.

48. Plaintiff was the operator of North American N9022Y within the meaning of the Federal Aviation Regulations. *See Id.*, para. 41.

49. Plaintiff has not submitted any written report of the North American N9022Y accident to the NTSB. *Id.*, para. 42.

50. Plaintiff's insurance carrier on North American N9022Y was the Southern Aviation Insurance Group. *Id.*, para. 43.

51. Shortly after the accident, Sam Maxwell of the Southern Aviation Insurance Group, telephoned defendant Rich to discuss whether plaintiff would be allowed to participate in the NTSB accident investigation. In the last conversation between Maxwell and defendant Rich, Maxwell demanded that the NTSB permit plaintiff to be present for the engine examination. Maxwell advised Rich that plaintiff would file suit to enjoin the NTSB's engine examination if plaintiff were not allowed to attend. *Id.*, para. 44.

52. Defendant Rich rejected Maxwell's request. Plaintiff's complaint herein was filed a few days later. *Id.*, para. 45.

53. Plaintiff was representing and acting on behalf of Southern Aviation Insurance Group in seeking to observe the NTSB engine examination. Plaintiff also has his own interests as earlier stated.

54. NTSB regulations prohibit any "party" to the NTSB investigation being represented by any person who also represents insurers. 49 C.F.R. § 831.11(c). *Id.*, para. 46. Defendant Rich reasonably believed that plaintiff would represent and act on behalf of Southern Aviation Insurance Group if plaintiff were allowed to observe the engine examination.

55. Plaintiff refused at his deposition to answer any questions about whether plaintiff or his insurer was paying plaintiff's expenses in this litigation. *Id.*, para. 47.

57. Defendants will not conduct any destructive testing on North American N9022Y's engine or related components. *Id.*, para. 48.

58. After the NTSB completes its examination of North American N9022Y's engine and related components, defendants will release everything of the engine and related components back to plaintiff. *Id.*, para. 49. Plaintiff and his technical experts may then examine all of the components.

59. Defendant Rich is required to complete an NTSB factual accident report of the investigation at the conclusion of the investigation. The required NTSB factual report will discuss the facts, conditions and circumstances of the accident and will include photographs and documentation of the component examinations conducted during the investigation. The NTSB factual report will be a public record. *Id.*, para. 50.

60. Plaintiff will be able to depose defendant Rich on factual information defendant Rich obtained during his investigation, including factual evaluations contained in the NTSB factual accident report. *Id.*, para. 51.

61. The defendants have a rational justification for excluding plaintiff from the NTSB disassembly and inspection of North American N9022Y's engine because defendants have rationally determined that they do not require any additional technical as-

sistance to thoroughly conduct the NTSB's examination of N9022Y's engine.

62. The defendants have a rational justification for excluding plaintiff from the NTSB disassembly and inspection of North American N9022Y's engine because plaintiff's, or his agent's, presence would impede the investigation by inhibiting candid discussions between the authorized NTSB and FAA participants during the examination.

64. The defendants have a rational justification for excluding plaintiff from the NTSB disassembly and inspection of North American N9022Y's engine because the defendants reasonably believe plaintiff will be represented by, and is acting for, Southern Aviation Insurance Group in violation of NTSB regulations. *See* 49 C.F.R. § 831.11(c). Defendants' belief is further supported by the inference reasonably drawn from plaintiff's refusal to answer defendants' related questions to plaintiff at his deposition.

65. Defendants have a rational justification for excluding plaintiff from the NTSB disassembly and inspection of North American N9022Y's engine.

66. To the extent that any of the foregoing findings of fact are also conclusions of law they should be incorporated in the following Conclusions of Law.

## II

### CONCLUSIONS OF LAW

1. Defendant National Transportation Safety Board is an independent federal agency required by law to investigate all civil aircraft accidents in the United States to determine and publicly report the facts, conditions, circumstances, and probable cause of such accidents. 49 U.S.C.App. §§ 1902, 1903(a)(1) and (a)(2).

2. The NTSB issues safety recommendations to government agencies and private organizations to reduce the likelihood of recurrence of transportation accidents. 49 U.S.C.App. § 1903(a)(3).

3. The NTSB is empowered by law "to examine and test to the extent necessary any civil aircraft, aircraft engine, propeller,

appliance, or property aboard an aircraft involved in an accident in air commerce." 49 U.S.C.App. § 1441(c).

4. Only the FAA is entitled by law to participate in NTSB investigations. 49 U.S.C.App. § 1441(g).

5. NTSB regulations at 49 C.F.R. §§ 831.11(a) and 831.12(a) "govern who will participate in the investigation *and who may have access* to the aircraft wreckage". *Graham v. Teledyne–Continental Motors*, 805 F.2d 1386, 1389 (9th Cir.1986) (Emphasis added.)

6. Under 49 C.F.R. § 831.11(a) the NTSB Investigator–In–Charge

> *may* ... designate parties to participate in the field investigation. Parties to the field investigation *shall be limited to* those persons, government agencies, companies, and associations who employees, functions, activities, or products were involved in the accident or incident and who can provide suitable qualified technical personnel to actively assist in the field investigation.

49 C.F.R. § 831.11(a). (Emphasis added.)

7. The Ninth Circuit has strictly construed 49 C.F.R. § 831.11(a) observing:

> The section is written in the permissive. It gives *no one* a right to participate; it merely authorizes the investigator to designate parties to the investigation.

*Graham* at 1389. (Emphasis added.)

8. Access to aircraft wreckage is restricted by 49 C.F.R. § 831.12(a), which provides:

> *Only* the Board's accident investigation personnel *and persons authorized* by the investigator-in-charge, the Director, Bureau of Accident Investigation, or the Director, Bureau of Field Operations to participate in any particular investigation, examination or testing shall be permitted access to aircraft wreckage....

49 C.F.R. § 831.12(a). *Graham* at 1389. (Emphasis added.)

9. Plaintiff has not been authorized by the NTSB investigator-in-charge, the Director, Bureau of Accident Investigation or

the Director, Bureau of Field Operations to participate in the N9022Y accident investigation, examination or testing.

10. Because plaintiff has not been authorized as required by 49 C.F.R. § 831.12(a) to participate in the N9022Y accident investigation, examination or testing, plaintiff does not qualify under that regulation to have access to the aircraft wreckage.

11. The only factual distinction between this case and *Graham* is that plaintiff herein has an ownership interest. *See Miller v. Rich*, 845 F.2d 190 at 192 (9th Cir.1988).[2]

12. No NTSB regulation gives an aircraft owner any right to observe an NTSB investigation of an accident involving his aircraft.

13. NTSB Order 6200.1A, Investigation Manual–Aviation Accidents And Incidents, is an internal NTSB Order solely for the guidance of NTSB personnel directly involved in aircraft accident investigation. The Manual is not an NTSB regulation and creates no rights in anyone.

14. Until June 27, 1988, the Manual contained a provision which acknowledged that aircraft owners might be parties:

> The categories of parties should be interpreted as *permitting* an owner/operator to participate. Except for cases in which prearrangements for notification have been made, the IIC has no responsibility to seek out potential parties. If they [potential parties] request participation, they or their *qualified* representative should be permitted participation.

Investigation Manual, page 4–4. (Emphasis added.)

15. The Manual also cautioned:

*All parties* must satisfy the IIC that their personnel are suitably qualified and *will actually be of assistance.* Approval is not automatic.

*Id.* (Emphasis added.)

16. The Manual in effect at the time of the N9022Y accident was not intended by the NTSB to accord aircraft owners any special consideration.

17. The Manual was revised, effective June 27, 1988, to eliminate the references to "owner/operator". The revised Manual applies to all continuing NTSB investigations from its June 27, 1988 effective date, including the N9022Y accident investigation.

18. The revised Manual does not provide any basis for treating aircraft owners differently from anyone else with respect to access to an NTSB accident investigation.

19. The Court of Appeals has concluded that defendants abused their discretion by excluding plaintiff from observing the NTSB disassembly and inspection of North American N9022Y's engine only because defendants had not given any reason at all for excluding plaintiff. *Miller* at 192.

20. However, only a *rational basis* is required for the NTSB's decision to exclude plaintiff from observing the NTSB disassembly and inspection of North American N9022Y's engine. *Graham* at 1389.

21. The defendants require only "some rational justification" to exclude plaintiff. *Miller* at 192. (Emphasis added.)

23. Any one of the rational justifications found by this Court is a sufficient rational justification for defendants to exclude plaintiff from observing the NTSB

---

2. *Miller* also reasoned:
Appellant in the instant case is not seeking to actively participate in the disassembly and inspection, he *merely* wishes *to observe.* In *Graham*, the appellant sought to have his representative actually participate in the testing. *Miller* at 192. (Emphasis added.) However, the *Graham* appellant *also* sought to observe:
> On learning that the NTSB was shipping the engines to Teledyne for inspection and testing, appellant requested permission to have her technical representative participate in, *or*

*at least observe,* the teardown inspection. Appellant asserted an interest.
*Graham* at 1387. (Emphasis added.) *Graham* disposed of appellant's claimed right to participate *or* observe, concluding:
> dead. The NTSB did not abuse its discretion by determining that it did not require appellant's representative as a participant *or observer* in the teardown of the engines. [Footnote omitted.]
*Graham* at 1390. (Emphasis added.)

disassembly and inspection of North American N9022Y's engine.

24. The defendants are not enjoined from proceeding with their disassembly and inspection of North American N9022Y's engine, subject to the Judgment.

25. Judgment shall be entered for defendants and against plaintiff, dismissing plaintiff's action with prejudice.

26. To the extent that any of the foregoing conclusions of law are also findings of fact they should also be deemed incorporated in the foregoing Findings of Fact.

## SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW OF THE COURT

Trial before the Court was conducted June 13 and 14, 1989. At the close of all the evidence and after the arguments of counsel, the Court issued an oral ruling in favor of defendants. In addition to those findings of fact and conclusions of law issued from the bench, the Court now adopts as additional Findings of Fact and Conclusions of Law those proposed by defendants, amended by the Court, and filed this date. The following Conclusions of Law supplement the foregoing:

1. The parties agree that the relevant standard of review to be applied by this Court is whether the National Transportation Safety Board's ("NTSB") decision to exclude plaintiff was an abuse of discretion. *Miller v. Rich*, 845 F.2d 190, 192 (9th Cir.1988). Accordingly, the NTSB's decision will not be upset absent a showing that the NTSB abused its discretion.

2. The parties agree that a disassembly should be further stayed, all as more fully provided in the Stipulated Injunction Pending Appeal.

3. The Court has this date signed and filed the Judgment.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk shall serve on all counsel a copy of these Findings of Fact and Conclusions of Law, the defendants' Findings of Fact and Conclusions of Law as amended by the Court, and the Judgment.