**THOMAS BROOKS CHARTERED, a professional corporation, Plaintiff–Appellee,**

v.

**James BURNETT, Norman Wiemeyer, and the National Transportation Safety Board, Defendants–Appellants.**

No. 89–1378.

United States Court of Appeals, Tenth Circuit.

Nov. 28, 1990.

Windle Turley (Richard N. Countiss and James P. Piper, with him on the brief), Dallas, Tex., for plaintiff-appellee.

Peter R. Maier, Appellate Staff Atty. (Stewart M. Gerson, Asst. Atty. Gen., Michael J. Norton, U.S. Atty., Anthony J. Steinmeyer, Appellate Staff Atty., with him on the briefs), Dept. of Justice, Washington, D.C., for defendants-appellants.

Before ANDERSON and BRORBY, Circuit Judges, and BRIMMER,* District Judge.

BRORBY, Circuit Judge.

The National Transportation Safety Board ("the NTSB" or "the Board") appeals the district court's award of summary judgment holding that the NTSB could not invite manufacturers of a plane and its component parts to participate in an NTSB investigation without also allowing a representative of the individual who was killed in the crash to participate as an observer. We reverse.

## I. BACKGROUND

The NTSB is the independent federal agency charged with investigating, determining the cause, and making recommendations for future precautions with respect to aircraft accidents.[1] To fulfill this task the Board is given authority to "examine and test to the extent necessary any civil aircraft, aircraft engine, propeller, appliance,

---

* The Honorable Clarence A. Brimmer, Chief Judge, United States District Court for the District of Wyoming, sitting by designation.

1. Two statutes govern the operation of the Board. The Independent Safety Board Act, 49 U.S.C.App. § 1901 *et seq.* establishes the Board and requires it to:

> investigate or cause to be investigated (in such detail as it shall prescribe), and determine the facts, conditions, and circumstances and the cause or probable cause or causes of any—
> (A) aircraft accident ... pursuant to title VII of the Federal Aviation Act of 1958, as amended;

49 U.S.C.App. § 1903(a)(1)(A) (1988).

The Federal Aviation Act states:

> It shall be the duty of the National Transportation Safety Board to—
> ....
> (2) Investigate [aircraft] accidents and report the facts, conditions, and circumstances relating to each accident and the probable cause thereof;
> (3) Make such recommendations to the Secretary of Transportation as, in its opinion, will tend to prevent similar accidents in the future;
> (4) Make such reports public in such form and manner as may be deemed by it to be in the public interest; ....

49 U.S.C.App. § 1441(a)(2)-(4) (1988).

or property aboard an aircraft involved in an accident in air commerce." [2] 49 U.S.C. App. § 1441(c).

Under the applicable enabling statute, the NTSB is authorized to make "rules and regulations as may be necessary to the exercise of its functions." 49 U.S.C.App. § 1903(b)(11). To that end, the Board promulgated a series of rules and regulations governing its investigation of aviation mishaps. Among them is the declaration that Board investigations are "fact-finding proceedings with no formal issues and no adverse parties...." 49 C.F.R. § 831.4. Board inquiries "are not conducted for the purpose of determining the rights or liabilities of any person." *Id.*

When an investigation commences an investigator-in-charge is selected to organize, conduct, and control the field phase. This individual assumes responsibility for supervising and coordinating all Board and non-Board personnel who are associated with the on-site probe. 49 C.F.R. § 831.8. Among the specific powers given to the investigator-in-charge is the authority to designate participating parties to the inquiry. The regulations provide, in relevant part:

> (a) The investigator-in-charge may, on behalf of the Director, Bureau of Accident Investigation, or the Director, Bureau of Field Operations, designate parties to participate in the field investigation. Parties to the field investigation shall be limited to those ... government agencies, companies, and associations whose employees, functions, activities, or products were involved in the accident ... and who can provide suitable quali-

fied technical personnel to actively assist in the field investigation.

49 C.F.R. § 831.11(a).

The regulations contemplate active participation from designated parties to an investigation. However, parties remain accountable to the Board "and may be relieved from participation if they do not comply with their assigned duties or if they conduct themselves in a manner prejudicial to the investigation." 49 C.F.R. § 831.11(b). Also, designated parties who exercise any of the broad investigatory powers of the Board—including the right to inspect, photograph, or copy accident-related documents and records under 49 C.F.R. § 831.9(a)—may not be "represented by any person who also represents claimants and insurers." 49 C.F.R. § 831.11(c). Access to accident-related wreckage and records is restricted to NTSB personnel and investigation participants. 49 C.F.R. § 831.12(a).

The NTSB claims the investigator-in-charge may—as a condition of participation—require parties to waive any objection to civil discovery about their investigatory role in the event litigation commences. In this appeal, the NTSB asserted this waiver is uniformly required from a "product manufacturer designated as a party." (Appellant's Brief at 5.) However, the NTSB cites no authority for this proposition and at oral argument conceded the requirement is merely derived from the implicit authority that an investigator-in-charge possesses and, as such, is discretionary. The record indicates the parties to this investigation signed statements indicating they were not participating for purposes of litigation.[3]

---

**2.** The foundation for the present day NTSB was initially laid in 1958 when Congress passed the Federal Aviation Act, 72 Stat. 731, 782 authorizing "creation of special boards of inquiry to investigate accidents which involve substantial questions of public safety in air transportation." H.R.Rep. No. 2360, 85th Cong., 2d Sess., *reprinted in* 1958 U.S.Code Cong. & Admin. News 3741, 3757. In 1966 the NTSB was designated as a subordinate agency within the Department of Transportation. It held that status until the mid 1970's when Congress made it a "totally separate and independent agency." S.Conf.Rep. 93–1347, 93d Cong., 2d Sess. *reprinted in* 1974 U.S.Code

Cong. & Admin. News 7669, 7694. *See* 49 U.S.C. App. § 1902(a).

When Congress redesignated the Board it recognized its outstanding record of investigating aviation accidents. S.Conf.Rep. 93–1347, 93d Cong., 2d Sess. *reprinted in* 1974 U.S.Code Cong. & Admin. News 7669, 7698. The parties do not dispute that record in this case nor do we have any reason to doubt the independence and integrity of the Board.

**3.** The statement signed by the parties provided:

> It is understood that a party representative to an investigation may not be a person who

■ The only parties an investigator-in-charge is required to designate are other federal government representatives who are involved in regulating air commerce. Congress specifically calls for the Secretary of Transportation, or his representatives, to join with the NTSB in investigating air accidents.[4] However, investigatory primacy remains with the Board and the Board has exclusive authority to determine the probable cause of an accident.[5]

In addition to parties, the investigator-in-charge has discretionary power to allow observers at select portions of an investigation; but admittance through this avenue is strictly limited. The NTSB observer policies are fashioned to allow "aeronautical organizations, current operators of like equipment, designated military personnel or representatives of a foreign government" to be on-hand for "initial organizational and final 'wind up' meetings" only. NTSB Investigation Manual—Aircraft Accidents and Incidents, at 4–12 (1980). The policies contain no clause permitting aircraft owners, representatives of deceased passengers, passengers, or others, to observe NTSB inquiries. *Id.* at 4–12. *See Miller v. Rich*, 723 F.Supp. 505, 508–09 (C.D.Cal.1989) (*Miller II*) (no section in the current NTSB Investigation Manual grants aircraft owners the right to attend an accident investigation).

There is no provision in any other statute, regulation, or manual that either requires or expressly permits the investigator-in-charge to admit merely interested persons as participants or observers of an investigation. For example, the news media is typically not allowed to attend an NTSB inquiry. Of course, given the broad authority the NTSB contends it implicitly has, it is conceivable that an investigator-in-charge could open an investigation for viewing by an interested person.

Although access to the investigation itself is strictly limited, the work-product of the NTSB is ultimately public and available to anyone. 49 U.S.C.App. § 1903(a)(2); 49 C.F.R. § 845.50. The work-product encompasses the NTSB report including "all factual information concerning the accident." 49 C.F.R. § 845.50(a). Moreover, the NTSB public docket on an accident is never "officially closed"; rather, it is kept open "for the submission of new and pertinent evidence by any interested person." 49 C.F.R. § 845.51.

Because the NTSB book on an accident is never shut, it is conceivable the NTSB could alter its findings about the cause of an aviation mishap following development of new information by persons not permitted to attend the NTSB inquiry. Any interested person, in fact, may submit proposed findings to the Board regarding an accident's probable cause. 49 C.F.R. § 831.14.

---

also represents claimants or insurers. The placement of a signature hereon constitutes a representation that participation in this investigation is not on behalf of either claimants or insurers and that, while any information obtained may ultimately be used in litigation, participation is not for the purposes of preparing for litigation.

By placing their signatures hereon all participants agree that they will neither assert nor permit to be asserted on their behalf, any privilege in litigation, with respect to information or documents obtained during the course of and as a result of participation in the NTSB investigation as described above. It is understood, however, that this form is not intended to prevent the undersigned from participating in litigation arising out of the accident referred to above or to require disclosure of the undersigned's communications with counsel.

4. Under the specific prevision of the Federal Aviation Act regarding NTSB investigations of

air accidents, the Board is called upon to "provide for the appropriate participation of the Secretary of Transportation and his representatives in any investigations conducted...." 49 U.S.C.App. § 1441(g). A similar requirement is imposed by the Independent Safety Board Act establishing the Board. 49 U.S.C.App. § 1903(a)(1). *See, e.g.,* 49 C.F.R. § 831.11(d) ("[W]hen appropriate, other Federal agencies, will normally be a party to field investigations and will have the same rights and privileges and be subject to the same limitations as other parties.").

5. "[T]he Secretary of Transportation or his representatives shall not participate in the determination of probable cause by the National Transportation Safety Board...." 49 U.S.C.App. § 1441(g). "Any investigation of an accident conducted by the Board ... shall have priority over all other investigations of such accident conducted by other Federal agencies." 49 U.S. C.App. § 1903(a)(1).

Also, anyone questioned by the NTSB during an investigation is entitled to have a representative, such as an attorney, present with them. 49 C.F.R. § 831.7. Thus, if an owner of a plane is deposed about its crash, or if a family member of a deceased pilot or passenger of a plane is questioned, they may be accompanied by their attorney.

Consistent with its fact-finding mission that is litigation neutral, NTSB reports are barred as evidence in court. 49 U.S.C.App. § 1441(e) ("No part of any report or reports of the National Transportation Safety Board relating to any accident or the investigation thereof, shall be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such report or reports."). *See also* 49 U.S.C.App. § 1903(c). Board employees may give limited testimony concerning the "factual information they obtained during the course of the accident investigation, including factual evaluations embodied in their factual accident reports." 49 C.F.R. § 835.3(b). When making these statements, Board employees may refer to their reports to refresh their recollection. 49 C.F.R. § 835.4. *See, e.g., Keen v. Detroit Diesel Allison*, 569 F.2d 547, 549–51 (10th Cir.1978) (NTSB investigator and FAA maintenance supervisor may testify as to what they observed at an accident scene and the manner in which they conducted their investigations but may not testify as to the proximate cause of the crash).

The restrictions on testimony are limited to NTSB employees and former employees. *See* 49 C.F.R. §§ 835.3, 835.7. We assume without deciding that the restrictions do not apply to those designated as parties to an accident investigation who are not Board employees.

Finally, the NTSB does not forbid private investigations conducted with an eye toward civil litigation. In fact, after its inquiry the Board releases any wreckage or records it took custody of while conducting its inquiry. 49 C.F.R. § 831.12(b). This material is then available to litigants to use in preparing their cases.

## II. FACTS

The sad facts underlying this action are undisputed. On August 2, 1988, Thomas W. Brooks was killed when the Beech Musketeer airplane he was piloting crashed on takeoff from the Philmont Scout Ranch near Cimarron, New Mexico. (Appellant's Brief at 8; Appellee's Brief at 3.) After the crash, the NTSB initiated its examination with Norman Wiemeyer of the Denver Field Office appointed investigator-in-charge.

At Wiemeyer's direction the aircraft wreckage was taken to a repair station in Greeley, Colorado, for testing and parties to the investigation were named. The parties included the aircraft manufacturer, Beech Aircraft, along with the engine manufacturer, Avco–Lycoming. Philmont Scout Ranch was also designated as a party. Wiemeyer did not, however, designate the plane's owner, Thomas Brooks, Chartered, a Colorado Professional Corporation ("Brooks"), as a party.

Wiemeyer made the decision not to include Brooks after reviewing pilot and aircraft records Brooks supplied. Wiemeyer determined Brooks' records were all that was needed for the NTSB study and there was no need for further contact with the owner of record in regard to the aircraft or pilot.

Thereafter, Wiemeyer was contacted by an attorney representing the deceased pilot's family. The attorney asked for permission to observe the aircraft evaluation. That request was subsequently rejected based on Wiemeyer's belief the attorney represented claimants and, as such, was barred from attending the investigation under NTSB rules. 49 C.F.R. § 831.11(c). Wiemeyer also denied the observation request based on his conclusion that the attorney had no technical expertise that would aid the investigation.

The NTSB General Counsel supported Wiemeyer's decision in a letter to the family attorney. Referring to the Board's enabling statutes, rules, and Investigator's Manual, the letter gives the reasons for

declining the observation request by stating, in relevant part, that:

A determination has been made that the investigator in charge does not have a specific need for any additional expertise. Moreover, you did not make a showing to Mr. Weimeyer [sic] that you could provide specialized expertise which he needed.

An agreement has been made that, at the completion of the teardown, the disassembled engine will be returned to the registered owner in accordance with Board Rule 831.12(b), formerly Rule 831.-10(b).

In view of the foregoing and in light of the fact that the Board's procedures make no provision for observers to the teardown, the Board's determination is that neither you nor your representative may observe the teardown.

Within a reasonable length of time after the teardown, a public docket that contains all the documents that comprise the Board's factual investigation of this accident will be created and will be available to any interested person who requests a copy from the NTSB....

The letter concludes by referring to the opportunity the attorney will have to depose investigators following the NTSB accident review.

The instant case was commenced in the district court following receipt of the NTSB letter by Brooks. Brooks claimed: (1) the NTSB abused its discretion and could not lawfully bar the owner of a plane from being present at the investigation concerning its crash; (2) the NTSB was arbitrary and capricious in refusing to allow Brooks to attend the investigation; and, (3) the NTSB decision was a taking of property without due process in violation of the Fifth Amendment.

The district court granted a preliminary injunction forbidding any disassembly, dismantling, or destructive inspection of the plane unless a Brooks observer was present. The court further ordered that Brooks' observer should be a technically qualified FAA airframe and powerplant mechanic. The order allowed the observer to take notes, but provided he could not take photographs or speak unless spoken to. The order finally granted the investigator-in-charge the power to exclude the observer if any conditions of the order were violated.

The district court subsequently granted Brooks summary judgment and made its preliminary injunction permanent. In so doing, it read the Independent Safety Board Act, 49 U.S.C.App. §§ 1903(b)(2), 1905, and saw in it no hint of a Congressional desire to bar an owner's representative from watching the NTSB team work. The court held it was an abuse of discretion for the NTSB to include manufacturers as parties without also including the aircraft owner.[6]

---

6. The district court's decision was made in a ruling from the bench wherein the judge stated:

The Court will grant the motion for summary judgment and issue a permanent injunction in this case.... I don't think we're talking about who is going to be part of the investigation team. We're talking very simply about whether a knowledgeable person may be an observer of what this team does in the fact situation where the owner is interested—in this case, the plaintiff—and where in this particular situation a representative of the manufacturer and the engine manufacturer, who certainly have stakes in the outcome of this investigation, are going to be part of this investigation team or observers.

I have looked at the statute; and for the record, we're talking more specifically about 49 United States Code section 1903(b)(2). There is nothing in 1903(b)(2) which would indicat[e or] even hint that Congress does not want a representative, a qualified representative of the owner to be an observer of what their team is doing. I've also looked at the other sections cited; and if anything, those sections lend weight to the position of the plaintiff and not the position of the defendant. For example, 1905 talks about public access to information.

....

Where we have this particular situation, where the manufacturer's rep and the engine manufacturer's representatives are going to be there and are going to be participating or observing—I'm not sure if they're actually going to be participating, or observing—the free exchange of ideas certainly is going to be inhibited no more by having the owner present, where you already have these representatives present. If free interchange is going to be inhibited, it's going to be inhibited with these representatives present.

The court's permanent injunction differed from the preliminary injunction in only one minor respect: the permanent injunction ordered that Brooks' observer could be either an FAA-certified airframe and powerplant mechanic, or other suitably qualified observer, whereas the preliminary injunction said the observer had to be an FAA-certified airframe and powerplant mechanic. NTSB now appeals from this order.[7]

### III. ANALYSIS

NTSB makes two arguments. First, it contends that its decision to bar Brooks' representative from observing the accident investigation was neither arbitrary nor capricious, and was not an abuse of discretion. The Board secondly asserts that the decision on who may attend an investigation is committed, by statute, to the agency's discretion. The Board therefore reasons that its decision is unreviewable in the district court. Because the second argument implicates the jurisdiction of the lower court and, *ipso facto*, our review, we begin with it.

### A.

■ At the outset, we note that a determination of the district court's subject matter jurisdiction is a question of law reviewable de novo on appeal. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988), *cert. denied*, 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989); *Madsen v. United States ex rel. United States Army, Corps of Eng'rs*, 841 F.2d 1011, 1012 (10th Cir. 1987).

■ We begin our analysis with the Administrative Procedure Act's ("the APA") provisions governing review of agency action. Judicial review of agency action is generally allowed except where "statutes preclude judicial review," or where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1)–(2) (1988). These are two separate tests and must be taken in order. If there is no statute that precludes judicial review, § 701(a)(1), then we determine whether the action is committed to agency discretion by law, § 701(a)(2). *See Turner v. United States Parole Comm'n*, 810 F.2d 612, 614 (7th Cir.1987); *Investment Co. Inst. v. FDIC*, 728 F.2d 518, 525 (D.C.Cir.1984).

■ Congress has not expressly forbidden review of actions by the NTSB. In fact, in the NTSB enabling act Congress specifically provides that "[a]ny order, affirmative or negative, issued by the Board" is subject to review in the court of appeals. 49 U.S.C.App. § 1903(d). Review is in accordance with the APA. *Id.*

Reading this provision, we see that Congress has evinced no express statutory intent that decisions by the NTSB are precluded from judicial review under section 701(a)(1). *See Sierra Club v. Hodel*, 848 F.2d 1068, 1075 (10th Cir.1988) (in the absence of an express statutory prohibition of judicial review—which would invoke APA § 701(a)(1)—an agency bears a heavy burden in overcoming the presumption that Congress did not mean to prohibit all judicial review). Nor do we discern a limitation on judicial review in this instance from the "structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block v. Community Nutrition Inst.*, 467 U.S. 340, 345, 104 S.Ct. 2450, 2454, 81 L.Ed.2d 270 (1984).

■ The questions remains, however, whether some actions by the NTSB are committed to its discretion by virtue of

---

But in any case, in this particular situation where you do have these parties present and then you are saying we're not going to allow observer status—not team status, because we're not talking about them being a part of the team, but observer status to the owner's representatives—to me it's just rather obvious that it is an abuse of discretion; that it is arbitrary and capricious.

7. On appeal, the Board waives its contention made in the trial court that summary judgment is precluded because genuine issues of material fact are unresolved. *See* Fed.R.Civ.P. 56; Appellant's Brief at 11 n. 12. Appellant also waives any argument concerning whether Brooks' request was properly styled and whether he exhausted administrative remedies. Appellant's Brief at 10 n. 9.

APA section 701(a)(2). Under section 701(a)(2), there is no judicial review where "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985). "In such a case, the statute ('law') can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely." *Chaney*, 470 U.S. at 830, 105 S.Ct. at 1655. In short, there is no judicial review of an agency decision where there is no law for the court to apply. *Id.* at 830, 105 S.Ct. at 1655. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971). However, this is a very narrow exception. *Id.* at 410, 91 S.Ct. at 820; *Hondros v. United States Civil Serv. Comm'n*, 720 F.2d 278, 293 (3d Cir.1983); *Kenai Oil & Gas, Inc. v. Department of Interior*, 671 F.2d 383, 386 (10th Cir.1982); *Sabin v. Butz*, 515 F.2d 1061, 1065 (10th Cir.1975).

█ In *Chaney*, the Court was faced with a decision by the Food and Drug Administration wherein the agency declined to commence an enforcement action. The Court referred to the decision not to act as an example of a decision committed to agency discretion by law. The Court concluded an agency is free to refrain from acting absent a Congressional enactment withdrawing discretion and commanding performance. *Chaney*, 470 U.S. at 834–35, 105 S.Ct. at 1657. In a situation where Congress commands the agency act there is law to apply and a court, pursuant to the standards of the APA, may review whether the agency acted in accordance with Congress' wishes. *Brock v. Pierce County*, 476 U.S. 253, 260 n. 7, 106 S.Ct. 1834, 1839

n. 7, 90 L.Ed.2d 248 (1986) (where the statutory command is that the agency shall act, a complainant adversely affected by the failure to act may bring an action in district court); *Perales v. Casillas*, 903 F.2d 1043, 1048 (5th Cir.1990) ("Review of agency nonenforcement decisions is permissible only where statutory language sets constraints on the agency's discretion.").

█ We, however, are not faced with a situation where the NTSB refuses to make a decision or take some action. The NTSB affirmatively decided that Brooks would not be allowed to participate in, or even observe, its official investigation into the crash of its plane. *See* majority op. at p. 640. And under *Chaney*, "when an agency *does* act to enforce, that action itself provides a focus for judicial review, inasmuch as the agency must have exercised its power in some manner. The action at least can be reviewed to determine whether the agency exceeded its statutory powers." 470 U.S. at 832, 105 S.Ct. at 1656 (emphasis in original).

█ Affirmative agency action is also reviewable where the agency purports to act pursuant to its own rules, rather than a statute. The failure of an agency to follow its own regulations is challengeable under the APA. *Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Community Action of Laramie County, Inc. v. Bowen*, 866 F.2d 347, 352 (10th Cir.1989) (substantive federal regulation is binding to the same extent as a statute and is reviewable). In this case the investigator-in-charge relied on both statutes and NTSB rules for naming participants, designating observers, and denying Brooks permission to witness the engine teardown.[8]

---

8. The investigator-in-charge states the following in his affidavit:

 After my preliminary examination I selected parties to the investigation in accordance with the criteria set forth in Section 831.11 of the NTSB Accident Investigation Procedures (49 CFR 831.11) on the basis of need for their active assistance in the technical aspects of the crash investigation.

 . . . .

 I focused upon my understanding of Section 304(c) of the Independent Safety Board Act

(49 U.S.C. 1903(c)) as the provision had been explained to me, and used by me, on numerous occasions by both the NTSB Denver Office Regional Director and by the NTSB General Counsel.

 . . . .

 I made a reasoned determination, *based on my understanding of the NTSB regulations, policy, and procedures* governing aviation accident investigations, that I would have no need for the presence of a representative of

The regulations the investigator relied on set forth objective criteria that are easily susceptible to judicial review. For example, government agencies, companies, and associations whose employees, functions, activities, or products were involved in the accident are eligible to be named parties if they can provide qualified technical personnel to assist. 49 C.F.R. § 831.11(a). Observers are likewise allowed if they are accredited members of aeronautical organizations, current operators of like equipment, designated military personnel, or representatives of a foreign government. NTSB Investigation Manual—Aircraft Accidents and Incidents at 4–12 (1980).

Thus, this case is readily distinguishable from our decision in *Laramie County*. In *Laramie County*, there were no objective guidelines for the federal agency to follow when it decided to end a federal grant that had been given to a local group. *Laramie County*, 866 F.2d at 353. Instead, the federal agency could terminate the grant based on its mere subjective belief that termination was more appropriate than a lesser sanction. Because discretion within the agency was so broad, we concluded the district court "has no standard against which to measure [the] exercise of discretion." *Id.* The same conclusion is not appropriate here because of the presence of readily identifiable objective criteria that were expressly relied on by the NTSB. Therefore, we hold that the district court had law to apply and so could review the NTSB decision under the standards set forth in the APA.

■ We further note that, to the extent Brooks challenges the constitutionality of the NTSB decision, the matter is also reviewable in court. *Webster v. Doe*, 486 U.S. 592, 603, 108 S.Ct. 2047, 2053, 100 L.Ed.2d 632 (1988) (serious constitutional question would arise if federal statute were construed to deny any judicial forum for a colorable constitutional claim); *Laramie County*, 866 F.2d at 352–53 ("[J]udicial review of colorable constitutional claims remains available unless Congress has made

its intent to preclude review crystal clear.").

### B.

Having determined that the NTSB decision barring Brooks from the accident investigation is judicially cognizable, we proceed to the merits. NTSB argues it was neither arbitrary nor capricious, and that it did not abuse its discretion, when it made the decision to keep Brooks out. In response Brooks argues just the opposite. He further suggests the NTSB's attempt to forbid his observation of the investigation violates the Fifth Amendment. In answering these contentions, we first stop to address the standard of review. *See, e.g., Overton Park*, 401 U.S. at 413, 91 S.Ct. at 822 ("[T]he existence of judicial review is only the start: the standard for review must also be determined.").

■ Both parties are correct in urging us to apply the statutory "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard of 5 U.S.C. § 706(2)(A) (1988) in determining whether to "hold unlawful and set aside [the] agency action." 5 U.S.C. § 706(2). Informal agency action is reviewed utilizing this standard. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 41, 103 S.Ct. 2856, 2865, 77 L.Ed.2d 443 (1983); *Overton Park*, 401 U.S. at 414, 91 S.Ct. at 822; *CF & I Steel Corp. v. Economic Dev. Admin.*, 624 F.2d 136, 139 (10th Cir.1980). Furthermore, it is well-settled that even though our inquiry is searching and careful, our ultimate standard of review is narrow. All the agency need do is demonstrate it considered relevant factors and alternatives after a full ventilation of the issues, and that the choice it made was reasonable based on those considerations. *American Mining Congress v. Marshall*, 671 F.2d 1251, 1255 (10th Cir.1982). We do not substitute our judgment for the agency's. Instead, we must uphold the agency if there is a rational basis for its decision. *Gallegos v. Lyng*,

---

the deceased pilot, or the owner of record, to participate in the aircraft evaluation....

(Emphasis added.)

891 F.2d 788, 790 (10th Cir.1989); *New Mexico Envtl. Improvement Div. v. Thomas*, 789 F.2d 825, 830 (10th Cir.1986); *Anderson v. United States Dep't of Hous. & Urban Dev.*, 701 F.2d 112, 115 (10th Cir.1983).

An agency's action will be set aside as unlawful if we are able to discern the agency "relied on factors which Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 42, 103 S.Ct. at 2866. *Accord Thomas*, 789 F.2d at 829–30; *Bedford County Memorial Hosp. v. Health & Human Servs.*, 769 F.2d 1017, 1022 (4th Cir.1985).

 We further recognize that although the agency's action may have first been considered by the district court, we accord the district court's decision no particular deference on appeal. *Webb v. Hodel*, 878 F.2d 1252, 1254 (10th Cir.1989). Our determination is an independent one based on the same administrative record that was before the court below. *Webb*, 878 F.2d at 1254. *See, e.g., Washington Health Facilities Ass'n v. Washington Dep't of Social & Health Servs.*, 879 F.2d 677, 681 (9th Cir.1989) (standard in reviewing agency decisions is the same as used by the district court).

 Turning now to the NTSB's principal argument on appeal, the Board makes three points. It asserts that the district court: misread NTSB's governing statutes and regulations; ignored or misapplied relevant case law; and, finally, wrongfully imposed its own views of procedural fairness on the Board.

The NTSB believes a correct reading of the applicable statutes and regulations provide only for the federal government—namely the Federal Aviation Administration—to participate in an NTSB inquiry as a matter of right. Otherwise, it feels the Board acting through the investigator-in-charge has discretion on who will participate or observe. The NTSB says the decision on who to admit is, and must be, made on a case by case basis. The decision, it maintains, turns on whether the potential party is able to assist the investigation in a meaningful way.

The district court came to a different conclusion. It said 49 U.S.C.App. § 1903(b)(2) of the Independent Safety Board Act reveals no hint that Congress meant to ban a representative of the owner from observing. In addition, it said references to public access to information in § 1905 lend weight to Brooks' position. *See* majority op. at n. 6. The court relied on a Ninth Circuit case to support its holding. *Miller v. Rich*, 845 F.2d 190 (9th Cir.1987) (*Miller I*).

The plaintiff in *Miller I* was the owner of a single-engine plane that crashed, killing one of the two occupants. Miller requested that his representative be on-hand to observe the engine disassembly. But the NTSB refused and the district court subsequently denied Miller's application for an injunction. The Ninth Circuit, on appeal, reversed and remanded because it believed the NTSB abused its discretion by denying Miller's request without offering any explanation. It rejected the NTSB's position that no reason need be given for the denial when the NTSB argued it possessed absolute authority regarding who to admit to its inspections. *Miller I*, 845 F.2d at 191–93.

At the time of the circuit court's decision, the NTSB manual on conducting aircraft crash investigations specified that an owner should be allowed to participate. *Id.* at 192. However, by the time the case was heard on remand the NTSB had revised its manual, deleting the language that called for treating aircraft owners differently from others who seek party status. *Miller II*, 723 F.Supp. at 511. In *Miller II*, the district court determined the NTSB was not abusing its discretion in preventing the owner from attending the investigation. The NTSB explanations that the owner could not help the safety probe, might impede free discussions, and might hinder the flow of information among the parties because of his litigation-oriented personal in-

terests were enough for the lower court. It concluded the NTSB had a rational basis for excluding the owner that was not an abuse of discretion. The injunction was again denied. *Id.* at 508, 511.

In this case, the district court distinguished the denial of an injunction in *Miller II* because that judge was not faced with a situation where the manufacturer's representatives were members of the team of parties to the exclusion of the owner. The lower court here felt that any NTSB fears concerning the potential adverse impact on free discussions due to the owner's presence were not applicable. We disagree and believe the rationale of *Miller II* is even more persuasive where an owner seeks to insinuate himself into an investigation that already includes a potential adversary in forthcoming civil litigation. The likelihood that the owner's presence would hinder the free exchange of ideas between the NTSB and manufacturer, thereby compromising the NTSB investigation, is plain.

We do not concur with the district court's interpretation of the statutes. Section 1903(b)(2) is directed at employees of the Board, and authorizes them to "enter any property wherein a transportation accident has occurred or wreckage from any such accident is located and do all things therein necessary for a proper investigation...." 49 U.S.C.App. § 1903(b)(2). In conducting their accident tests, the provision requires NTSB employees to reduce interference with remaining transportation services and to preserve, to the maximum extent feasible, any evidence relating to the transportation accident *"consistent with the needs of the investigation* and with the cooperation

9. The Board further argues that § 1903(b)(2) does not even apply to aviation accidents because it only addresses examination and testing of a surface "vehicle, rolling stock, track, or pipeline component or any part of any such item when such examination or testing is determined to be required for purposes of such investigation." 49 U.S.C.App. § 1903(b)(2). The Board says investigation into aircraft accidents is governed separately by § 1441 of Title 49. In support of this position the Board refers to the legislative history of § 1903 and the House Report that specifically says "examinations and tests for aviation safety is dealt with by section 701 of the Federal Aviation Act." H.R.Rep. No.

of [the] owner or operator." *Id.* (emphasis added). Nothing in this provision expressly issues an owner an automatic admission ticket to an NTSB investigation.[9]

We further find the legislative history of section 1903 supports our view. The statute refers to evidence gathering by the NTSB and calls on the NTSB to cooperate with owners to the extent possible to avoid unnecessary litigation about uncovering evidence.

If, however, arrangements cannot be worked out, the NTSB

> has the authority to secure an immediate court order as necessary to obtain evidence and conduct examinations or tests. Thus, consent of the owner is not a precondition to NTSB conducting examinations or tests consistent with the needs of the investigation.

H.R.Rep. No. 97–108, Part II, 97th Cong., 1st Sess., *reprinted in* 1981 U.S.Code Cong. & Admin. News 1736–37. In this case, the NTSB received the input it needed from Brooks when it asked for, and received, its aircraft records. Slip op. at p. 10. Assuming without deciding that section 1903(b)(2) applies to this investigation, slip op. at n. 9, both Brooks and the NTSB complied with the statute by cooperating with each other regarding the aircraft's records. We read no additional requirement into the statute about Brooks' attendance at the subsequent NTSB investigation except to stress again that the statute clearly focuses the Board's attention on the "needs of the investigation," and not on the desires of the owner. 49 U.S.C.App. § 1903(b)(2).

97–108, Part II, 97th Cong., 1st Sess., *reprinted in* 1981 U.S.Code Cong. & Admin. News 1729, 1737 n. 1. The Board surmises that even if § 1903(b)(2) can be read to allow an owner the right to participate in an NTSB investigation, the section does not apply here because this accident involves an airplane and not a surface vehicle. Brooks, in contrast, maintains that the word vehicle can be read to include aircraft. Because we believe § 1903 does not grant owners the right to attend an investigation in any event, we need not decide whether § 1903 governs NTSB conduct with respect to surface accidents only.

■ Also, section 1905, which the district court referred to in its ruling, majority op. at n. 6, discusses public access to information. It provides that copies of any "communication, document, investigation, or other report, or information received or sent by the Board" shall be available for the public to inspect and purchase at a reasonable cost. 49 U.S.C.App. § 1905(a). The statute does not, however, give any member of the public the right to be present when the NTSB report is being written. In addition, the NTSB regulations, made pursuant to the statutes, further focus our attention on the fact-finding, litigation neutral aspect of the investigation. Whether parties are named is left to the discretion of the investigator-in-charge. When they are picked, they are identified according to "who can provide suitable qualified technical personnel to actively assist in the field investigation." 49 C.F.R. § 831.11(a). Likewise, observer status is granted only to "aeronautical organizations, current operators of like equipment, designated military personnel or representatives of a foreign government" who possess a safety-related interest in the investigation that goes beyond the litigation-planning posture Brooks is in. NTSB Investigation Manual—Aircraft Accidents and Incidents, at 4–12 (1980).

Moreover, we believe the district court implicitly recognized Brooks would not help this investigation when it ordered he would have to be completely silent during any meeting he went to, and that he could only take notes and not speak unless spoken to. The district court apparently imposed its own idea of proper conduct you would rightly expect to find in civil litigation that determines tort liability. But the district court's view is not consistent with the purpose of the NTSB probe. "Wherever the parties may stand with respect to each other under applicable tort law, they stand on much different footing vis-a-vis the NTSB's investigation." *Graham v. Teledyne–Continental Motors,* 805 F.2d 1386, 1389 (9th Cir.1986), *cert. denied,* 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987). "The NTSB's function is 'to promote transportation safety by conducting independent accident investigations and by formulating safety improvement recommendations.'" *Graham,* 805 F.2d at 1389 (quoting 49 U.S.C. App. § 1901(1)). Because the Board has no role in determining civil liability, it need not be forced to admit a plaintiff as a fly on the wall. Brooks' presence would compromise this investigation by hindering the NTSB as it works to zero in on the cause of the mishap. If Brooks attends, the Board will be prevented from fulfilling its statutory mission of formulating safety recommendations in a neutral, calm and scientific atmosphere. Furthermore, Brooks' attendance would certainly chill the give-and-take between the NTSB and any manufacturer. The incentive a manufacturer has in uncovering potential product defects by working with the NTSB will be frustrated the instant Brooks arrives to monitor discussions and take notes. An NTSB investigation is a forum for developing safety recommendations. It is not a show for an audience of silent note takers looking for someone to sue.

The district court's order will also, if taken to its logical boundaries, result in unwieldy NTSB investigations. In this case the court ordered a single observer to be present at every NTSB meeting concerning the crash. It is possible, however, the expert the court made room for will not be qualified to observe with understanding each aspect of the NTSB inquiry. If something comes up beyond the scope of the authorized observer's qualifications, the entire probe may be halted while the plaintiff attempts to find a suitable replacement. Additionally, the NTSB may elect to have certain tests conducted by outside experts while continuing to meet on the accident as a whole. In that event, a plaintiff could further complicate the investigation by insisting that a separate representative be present for each outside test while the first observer continues to watch the primary accident-related discussions. Finally, should the rule announced by the district court be extended to investigations of major aircraft accidents involving many individuals, it is conceivable the NTSB would be forced to make room for dozens of out-

side observers who would contribute nothing to the inquiry. Their only function would be to listen for potential theories of tort liability to benefit their clients. We could expect numerous petitions to the judiciary requesting observer status for each new expert.

In insisting he should attend, Brooks suggests—without providing any evidence—that having the manufacturer present without the owner compromises the integrity of the NTSB factual report. In making this suggestion, Brooks contends the manufacturers actually run the investigation while the NTSB takes a back seat. He sees the official investigation as little more than a cover-up by manufacturers. Under Brooks' scenario, a verdict pinning an accident's cause on pilot error instead of on a manufacturer's product is preordained whenever the owner does not go to the NTSB meetings. In making these charges, Brooks ignores the checks built into the statutes and NTSB rules that help ensure the investigation's credibility.

First, NTSB's reports are freely available to anyone. 49 U.S.C. App. § 1905(a). However, as a protection for plaintiffs Congress forbids an NTSB probable cause determination from being introduced as evidence in a related tort case. Only factual aspects of an NTSB report may be used. 49 U.S.C. App. §§ 1441(e), 1903(c). Second, after the NTSB investigation the aircraft and its component parts are returned to the owner so he may commence an independent investigation and compare his findings to those of the NTSB. 49 C.F.R. § 831.12(b). The owner may use the results of his independent inquiry in his tort case without any restriction. Third, the owner may depose NTSB employees about the "factual information they obtained during the course of the accident investigation, including factual evaluations embodied in their factual accident reports." 49 C.F.R. § 835.3(b). The owner may also depose parties to the investigation who are not NTSB employees and may utilize their direct testimony in court. In this case, we note that Brooks has the added protection of knowing that all parties, including the manufacturers, signed discovery waivers as a condition of their party status. They therefore gave up discovery privileges potentially assertable in a tort liability case. Slip op. at n. 3. Finally, NTSB rules prohibit any party to the investigation from being represented by "any person who also represents claimants or insurers." 49 C.F.R. 831.11(c).

The NTSB explained its reasons for denying Brooks admission, slip op. at 11, and reiterated those justifications to the district court. Reviewing the Board's explanation, we do not believe it relied on factors that Congress did not intend it to consider, or that it entirely failed to consider an important aspect of the problem. The proffered explanation does not run counter to the evidence in the record and is certainly not implausible. Accordingly, we hold the NTSB was neither arbitrary nor capricious, and did not abuse its discretion or act contrary to law when it barred Brooks from its official investigation. We find our holding is supported by *Graham,* wherein the court was faced with a similar case of a deceased pilot's representative seeking admission to an NTSB engine teardown. The court determined the pilot's representative could add "nothing unique" to the investigation, and upheld the NTSB decision keeping the representative out. *Graham,* 805 F.2d at 1389. As for Brooks' suggestions of impropriety by the NTSB, we believe Brooks performs a disservice to the dedicated investigators by implying all NTSB investigations are compromised when a manufacturer is a party.

Finally, Brooks also asserts that barring him from the investigation constitutes an impermissible taking of property in violation of the Fifth Amendment. We find no merit to this claim. As we have noted, Brooks gets all of his property back after the NTSB completes its inquiry. In the unlikely event that something happens to the property while the NTSB is supervising its testing by the manufacturer, he has at his disposal all the "sanctions available to punish those who [wrongfully] alter or destroy evidence." *Graham,* 805 F.2d at 1390 n. 9. By its mere testing of the plane, the NTSB is not denying Brooks the chance to make a claim against a manufacturer.

For these reasons, we find that Brooks cannot validly claim that the NTSB investigation is unconstitutional.

## IV. CONCLUSION

The decision of the NTSB denying Brooks admission to the official investigation concerning the crash of his plane was not a decision the district court was prevented from reviewing either by statute, or by virtue of the decision being committed to the NTSB's discretion by law. To the extent the NTSB decision implicated the Constitution, the district court also had the power to review it. Having so held, we further conclude that the NTSB decision barring Brooks from the investigation was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Therefore, the judgment of the district court is REVERSED and its permanent injunction is VACATED.