# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

**Patrick J.  Fisher, Jr.**
**Clerk**

**Elisabeth A. Shumaker**
**Chief Deputy Clerk**

June 3, 1997

**TO:** All recipients of the captioned opinion

**RE:** 96-3094, McAlpine v. U.S.A.
May 7, 1997

Please be advised of the following correction to the captioned decision:

The last paragraph of the Discussion section has been revised to correct a typographical error.

The revised opinion is attached for your convenience.

Very truly yours,

Patrick Fisher, Clerk

Susie Tidwell
Deputy Clerk

encl.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 7, 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

JOHNNIE LOUIS MCALPINE,

       Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA and
BUREAU OF INDIAN AFFAIRS,

       Defendants-Appellees.

No. 96-3094

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 95-1171-JTM)

---

Luis A. Toro, Senn, Lewis, Visciano & Strahle, P.C., Denver, Colorado, for Plaintiff-Appellant.

Jackie N. Williams, United States Attorney, and Stephen K. Lester, Assistant United States Attorney, Wichita, Kansas, for Defendants-Appellees.

---

Before BRORBY, LOGAN, and HENRY, Circuit Judges.

---

HENRY, Circuit Judge.

---

Johnnie Louis McAlpine appeals from the district court's grant of the

government's motion to dismiss his appeal of the Secretary of the Interior's decision denying his application to take his land into trust status. The district court dismissed Mr. McAlpine's appeal for lack of subject matter jurisdiction, ruling that the Secretary's decision is a non-reviewable discretionary act and, alternatively, that the Secretary considered the relevant regulatory factors in reaching his decision. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and reverse the district court's dismissal for lack of subject matter jurisdiction. However, we affirm the district court's judgment for the government on the merits of Mr. McAlpine's claim.[1]

## I. BACKGROUND

### A. Factual and Procedural History

Mr. McAlpine is an enrolled member of the Osage Tribe who purchased two parcels of land in Woodson and Neosho counties in southeastern Kansas in 1988. On January 18, 1990, Mr. McAlpine filed a formal request asking the Secretary of the Interior to take his land into trust status under the authority of the 1871 annual appropriations act for the Indian Department, 16 U.S. Stat. 544, Ch. 120 (1871). On February 9, 1990, the

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore submitted without oral argument.

2

Superintendent of the Osage Agency of the Bureau of Indian Affairs (BIA)--which is within the Department of the Interior--in Pawhuska, Oklahoma denied Mr. McAlpine's request, finding, among other things, that the statute in question, which provided appropriations for individual Osages to acquire allotted lands of the diminished Osage reservation in Kansas, did not apply to the two parcels of land because they were not part of the diminished reservation and that there was no justifiable reason to place the land in trust status and take it off the local tax rolls.

Mr. McAlpine first appealed this decision to the BIA's Muskogee, Oklahoma Area Director. On March 21, 1990, the Area Director concurred with the Superintendent's decision, finding that the appropriate statutory authority for analyzing trust land acquisitions is § 5 of the Indian Reorganization Act (IRA) of 1934, 25 U.S.C. § 465, and that the BIA's task was to apply its regulations promulgated under § 465 in reaching its decision. On appeal of the Area Director's decision to the Secretary of the Interior, the Interior Board of Indian Appeals (IBIA)--to which the Secretary's authority is delegated, see 21 C.F.R. § 4.1 (1990)[2]--affirmed, concluding that the administrative record demonstrated that the BIA properly exercised its statutory and regulatory authority in denying Mr. McAlpine's request.

Mr. McAlpine initiated the present action pro se, seeking to compel the Secretary

---

[2]    Because the BIA's decision regarding Mr. McAlpine's request occurred in 1990 and because the relevant regulations have subsequently been amended, we will reference the regulations as they exist in the 1990 Code of Federal Regulations.

to accept his land in trust status. The district court granted the government's motion to dismiss on the grounds that the Secretary's decision not to take his land into trust was an exercise of agency discretion not reviewable under the Administrative Procedures Act (APA), 5 U.S.C. §§ 551-706. Furthermore, the district court held in the alternative that, even if it did have jurisdiction to review the agency action, Mr. McAlpine failed to demonstrate that the BIA failed to consider the relevant regulatory factors in making its decision. Mr. McAlpine then filed this appeal pro se, and this court appointed special counsel for Mr. McAlpine to address the jurisdictional question decided by the district court.

### B. Statutory and Regulatory Framework

Congress passed the IRA in 1934 to end the allotment policy initiated in 1887 under the General Allotment Act of 1887, ch. 119, 24 Stat. 388, which had opened tribal lands for individual ownership--both Indian and non-Indian. See Felix S. Cohen, Handbook of Federal Indian Law 130-32, 147 (Rennard Strickland et al. eds., 1982). The purposes of the IRA was "to rehabilitate the Indian's economic life and to give him a chance to develop the initiative destroyed by a century of oppression and paternalism." Mescalero Apache Tribe v. Jones, 411 U.S. 145, 152 (1973) (quoting H.R.Rep. No. 1804, 73d Cong., 2d Sess., 6 (1934)). To facilitate this purpose, the IRA, among other things, prohibited any further transfer of Indian lands outside of the tribes and provided the

Secretary authority to replace lands in lieu of those already allotted.  See Cohen, supra, at 147-49.  Most important for our purposes is § 5 of the IRA, which addresses the acquisition of property by the Secretary for the benefit of Indians:

> The Secretary of the Interior is hereby authorized, in his discretion, to acquire through purchase, relinquishment, gift, exchange, or assignment, any interest in lands, water rights, or surface rights to lands, within or without existing reservations, including trust or otherwise restricted allotments whether the allottee be living or deceased, for the purpose of providing land for Indians.
> . . .
> Title to any lands or rights acquired pursuant to [the various sections] of this title shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired, and such lands or rights shall be exempt from State and local taxation.

25 U.S.C. § 465 (emphasis added).

Section 5 of the IRA is implemented by the BIA in its regulations concerning "land acquisitions" located at 25 C.F.R. Part 151 (1990).  These regulations provide that any enrolled member of a recognized tribe may file a written request with the Secretary to convey fee land held by that Indian into trust status.  Id. at §§ 151.2(c)(1), 151.4, 151.9.  In evaluating requests to acquire land in trust status, the regulations provide that the Secretary, or his or her authorized representative, shall consider the following factors:

> (a) The existence of statutory authority for the acquisition and any limitations contained in such authority;
> (b) The need of the individual Indian or the tribe for additional land;
> (c) The purpose for which the land will be used;
> (d) If the land is to be acquired for an individual Indian, the amount of trust or restricted land already owned by or for that individual and the degree to which he needs assistance in handling his affairs,
> (e) If the land to be acquired is in unrestricted fee status, the impact on the State and its political subdivisions resulting from the removal of the

5

land from the tax rolls;

  (f) Jurisdictional problems and potential conflicts of land use which may arise; and

  (g) If the land to be acquired is in fee status, whether the Bureau of Indian Affairs is equipped to discharge the additional responsibilities resulting from the acquisition of the land in trust status.

25 C.F.R. § 151.10.

In the event that the Secretary determines that a request should be denied, the regulations require the Secretary to inform the applicant as to the reasons in writing and notify him or her of the right to appeal this decision to the IBIA. See id. at § 151.11; Part 2 (describing the administrative appeal process).

## II. DISCUSSION

### A. Reviewability Under the APA

The district court, relying on the Eleventh Circuit's decision in Florida Department of Business Regulation v. United States Department of the Interior, 768 F.2d 1248 (11th Cir. 1985), determined that the Secretary's decision under § 5 of the IRA as to whether to acquire land in trust is a discretionary act not reviewable under the judicial review provisions of the APA, 4 U.S.C. §§ 701-706. On appeal, Mr. McAlpine argues that judicial review of the Secretary's decision to deny his request for trust status is available both under the APA and 28 U.S.C. § 1353, which provides federal court jurisdiction over civil actions relating to Indian allotments. We review de novo the district court's

6

dismissal of this claim for lack of subject matter jurisdiction.  See Painter v. Shalala, 97 F.3d 1351, 1355 (10th Cir. 1996).

The APA provides that any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702 (1994).  This provision applies so long as the action is a "final agency action for which there is no other adequate remedy in a court."  Id. at § 704.  As the Supreme Court has recognized, the APA establishes a strong presumption in favor of reviewability of agency action.  Abbott Labs. v. Gardner, 387 U.S. 136, 140 (1967), overruled on other grounds, Califano v. Sanders, 430 U.S. 99 (1977).   The APA, however, provides two exceptions to this presumption.  Section § 701(a) provides that judicial review shall not apply to the extent that "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law."  5 U.S.C. § 701(a)(1)-(2).

In interpreting the distinction between these two exceptions, the Court has explained that the "former applies when Congress has expressed an intent to preclude judicial review.  The latter applies in different circumstances; even where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."  Heckler v. Chaney, 470 U.S. 821, 830 (1985).  In the present case, the statutory language does not expressly preclude judicial review.  Furthermore, neither

party directs us to, nor have we found, any other statute precluding review of the

Secretary's decision regarding trust land acquisitions.[3] Therefore, we proceed

immediately to the applicability of the second exception to the presumption of judicial

review under the APA--that is, whether the "agency action is committed to agency

---

[3]    In fact, subsequent to the filing of Mr. McAlpine's notice of appeal in this case, the BIA amended its regulations regarding land acquisitions to add a new procedure to facilitate judicial review of decisions by the Secretary to take land into trust. See 61 Fed. Reg. 18082 (Apr. 24, 1996) (to be codified at § 151.12(b)). In the preamble to the amended regulation, the bureau states that "[j]udicial review is available under the APA because the IRA does not preclude judicial review and the agency action is not committed to agency discretion by law within the meaning of the APA." Id. at 18082-83. The new regulation establishes a 30-day waiting period after final administrative decisions to acquire land in trust and allows parties to seek judicial review under the APA of decisions of the IBIA before actual title to the land is transferred to the government. See id. at 18082.

The amended regulation does not apply in this case, however, because the regulation was not in force when the BIA's decision was made in 1990. Furthermore, the regulation curiously provides for judicial review only where the Department of the Interior intends to acquire land in trust--on its terms the regulation does not address the question of the reviewability of decisions not to acquire lands, as is the case here. See id. at 18082-83. Even though this appears to be an oversight and the government concedes in its supplemental brief that there is jurisdiction to review its decisions under the APA, the text of the new regulation only provides for review where an application for trust status is granted.

We also hesitate to rely on the government's argument for another reason. As Justice Scalia observed in his dissent in Department of the Interior v. South Dakota, 117 S. Ct. 286 (1996) (Scalia, J., dissenting), if judicial reviewability is germane to a delegation argument it would be "only such reviewability as would exist of right and not such as would be accorded only at the discretion of the agency." Id. at 287. We hold the judicial review here, as in our oil and gas cases, discussed infra, is of right, not dependent on a governmental concession, but dependent upon the agency's obligation to follow its own regulations, see Thomas Brooks Chartered v. Burnett, 920 F.2d 634, 642 (10th Cir. 1990), and the authorizing statute, see South Dakota v. United States Department of the Interior, 69 F.3d 878, 887-88 (8th Cir. 1995) (Murphy, J., dissenting) (discussing the limitations on the Secretary's discretion set forth in § 5 of the IRA).

8

discretion by law." 5 U.S.C. § 701(a)(2).

Section 701(a)(2) excepts from judicial review only a very narrow range of agency decisions. See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410 (1971); Kenai Oil & Gas, Inc. v. Dept. of the Interior, 671 F.2d 383, 386 (10th Cir. 1982). According to the Supreme Court, the "committed to agency discretion" exception "is a very narrow exception," Citizens to Preserve Overton Park, 401 U.S. at 410 (quoting S.Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)), and the legislative history of the APA "indicates that it is applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply,'" Id. There is "no law to apply" where "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." Heckler, 470 U.S. at 830. Furthermore, while the determination of whether there is "law to apply" often focuses on the controlling statute, we have previously recognized that the "law to apply" can also be derived from the agency's regulations where the agency is acting pursuant to those regulations. See Thomas Brooks Chartered v. Burnett, 920 F.2d 634, 642 (10th Cir. 1990) ("The failure of an agency to follow its own regulations is challengeable under the APA.") (citing Service v. Dulles, 354 U.S. 363 (1957)); Community Action of Laramie, Inc. v. Bowen, 866 F.2d 347, 352 (10th Cir. 1989) ("Because a valid legislative rule or substantive federal regulation is binding to the same extent as a statute [citation omitted], [the agency's] failure to follow its own regulations likewise may be challenged under the

9

APA."); see also, Center for Auto Safety v. Dole, 846 F.2d 1532, 1534 (D.C. Cir. 1988) ("We have previously recognized that regulations promulgated by an administrative agency in carrying out its statutory mandate can provide standards for judicial review of agency action.").

The Eleventh Circuit is the only other federal appellate court to decide whether a party may seek judicial review of the Secretary's decisions regarding trust land acquisitions.[4] In Florida Department of Business Regulation, several state agencies challenged the decision of the Secretary to acquire a tract of land in trust for the benefit of the Seminole Tribe of Florida. 768 F.2d at 1250. After determining that the IRA itself provided no specific limits on the discretion of the Secretary to acquire land, the court then examined the state agencies' contention that the "law to apply" could be found in the factors listed in the BIA's regulations at 25 C.F.R. § 151.10. Id. at 1252, 1255-56. The

---

[4]        In South Dakota v. United States Department of the Interior, 69 F.3d 878 (8th Cir. 1995), judgment vacated and remanded, 117 S. Ct. 286 (1996), mandate recalled and opinion vacated by 106 F.3d 247 (8th Cir. 1996), the Eighth Circuit confronted the question of whether the Secretary's decision to acquire land in trust for the Lower Brule Tribe of the Sioux Indians was judicially reviewable. While the court discussed this issue, however, it did not reach any conclusion regarding reviewability. Instead, the court held that the IRA's delegation of authority to the Secretary to acquire land for Indians under § 5 was an unconstitutional delegation of legislative power because it did not impose sufficient boundaries on the Secretary's delegated authority. Id. at 885. The case is presently on remand to the Secretary of the Interior for reconsideration of his administrative decision in light of the amended regulations. See 106 F.3d at 247.
        Because neither party in this case raises the unconstitutional delegation question addressed in South Dakota and because the Eighth Circuit's opinion was vacated by the Supreme Court and the mandate recalled, for purposes of this appeal we assume the constitutionality of § 5 of the IRA and address only those issues raised by the parties.

court concluded:

> [T]he factors, although they are guides for the exercise of the Secretary's discretion, are not "law" that a reviewing court can apply. The regulation does not purport to state how the agency should balance these factors in a particular case, or what weight to assign to each factor. Nor does it mandate that the Secretary not acquire lands located in particular areas, or limit the size of acquisitions. The factors listed in the regulation are not the kind of legal principles courts are familiar with applying to a particular case.

Id. at 1256-57.

On the basis of this reasoning, the Eleventh Circuit--after holding that the Quiet Title Act, 28 U.S.C. § 2409a, prohibited waiver of sovereign immunity under § 702 of the APA--held that the Secretary's decision to acquire land in trust for Indians under § 5 of the IRA was also "unreviewable as within his discretion" under the APA. Id. at 1257. While the decision sought to be reviewed in Florida Department of Business Regulation was the converse of that before this court--that is, the Secretary's grant of trust status as opposed to denial of a request to take land into trust status--the legal question this court must answer is functionally the same as that decided by the Eleventh Circuit.

The Eleventh Circuit's unreviewability holding in Florida Department of Business Regulation is not persuasive for two principal reasons. First, we hold there is "law to apply" in this case. Even assuming that the statutory language contained in § 5 of the IRA does not provide "law to apply" in this case, we hold that the regulatory factors for evaluating trust land acquisition requests at 25 C.F.R. § 151.10 do provide "law to apply" in evaluating the Secretary's exercise of his discretion. Section 151.10 provides seven

11

factors which the Secretary "shall" consider "[i]n evaluating requests for the acquisition of land in trust status." 25 C.F.R. § 151.10. The factors include the need for the individual Indian or tribe for additional land, the purposes for which the land will be used, the impact on the state and its political subdivisions resulting from the removal of the land from the tax rolls, and the potential for jurisdictional problems and conflicts of land use which may arise from the acquisition. See id. While the regulation does not provide guidance on how the Secretary is to "weigh" or "balance" the factors, it does provide a list of objective criteria that the decisionmaker is required to consider in evaluating trust land acquisition requests. See Turri v. I.N.S., 997 F.2d 1306, 1308-09 (10th Cir. 1993) (holding that as long as the administrative agency "considers all the relevant factors, this court cannot second-guess the weight, if any, to be given any factor" where no weight prescribed in the law). Because an agency's failure to follow its own regulations is challengeable under the APA, see Thomas Brooks Chartered, 920 F.2d at 642, and because the touchstone of our eventual review of the administrative action is to determine only "whether the decision was based on a consideration of the relevant factors," Overton Park, 401 U.S. at 416, we conclude the regulatory factors contained at § 151.10 do provide a meaningful and objective standard by which the court can judge the Secretary's exercise of discretion in this case.[5]

---

[5]     We note that in footnote 11 of Florida Department of Business Regulation, the Eleventh Circuit observed that "[e]ven when a decision is committed to agency discretion, a court may consider allegations that an agency failed to follow its own

12

Second, the Eleventh Circuit's holding is unpersuasive because the Secretary's decision regarding trust land acquisitions is the type of administrative agency action over which the federal courts have traditionally exercised reviewing authority under the APA. As stated above, the APA embodies a "basic presumption of judicial review." Abbott Labs, 387 U.S. at 140. This court has held in several cases challenging the Secretary of the Interior's discretion to approve oil and gas communitization agreements involving Indian mineral interests that judicial review of the Secretary's decision is available under the APA. See Woods Petroleum Corp. v. Department of the Interior, 47 F.3d 1032 (10th Cir.) (en banc), cert. denied sub nom. Spottedwolf v. Woods Petroleum Corp., 116 S. Ct. 54 (1995); Cheyenne-Arapaho Tribes v. United States, 966 F.2d 583 (10th Cir. 1992), cert. denied sub nom. Woods Petroleum Corp. v. Cheyenne-Arapaho Tribes of Oklahoma, 507 U.S. 1003 (1993); Cotton Petroleum Corp. v. Department of the Interior, 870 F.2d 1515 (10th Cir. 1989). These oil and gas cases, a substantial corpus of law in our circuit, are analogous to the case at hand. In Woods Petroleum, for instance, we

---

binding regulations." 768 F.2d at 1257 n.11 (citing Local 2855, AFGE (AFL-CIO) v. United States, 602 F.2d 574, 580 (3d Cir. 1979)." However, the case cited as authority for this proposition, Local 2855, indicates that this exception is to be applied only in a narrow set of circumstances: "Even when a court ascertains that a matter has been committed to agency discretion by law, it may entertain charges that the agency lacked jurisdiction, that the agency's decision was occasioned by impermissible influences, such as fraud or bribery, or that the decision violates a constitutional, statutory or regulatory command." 602 F.2d at 580 (citations omitted). We hold that this exception does not apply in this case because the BIA's regulations do provide "law to apply" and therefore the Secretary's action is not "committed to agency discretion by law" and exempt from review under APA § 701(a)(2).

13

stated that "we have consistently admonished the Secretary to analyze all relevant factors and have reversed rulings that either disregarded certain factors or treated one factor as determinative." 47 F.3d at 1038. In these cases, the agency's oil and gas guidelines similarly do not "state how the agency should balance these factors in a particular case, or what weight to assign to each factor." Florida Dep't of Business Regulation, 768 F.2d at 1256.

Finally, we note that the agency action in this case is not within the narrow category of administrative decisions that courts have typically found to be unreviewable under § 701(a)(2). In Lincoln v. Vigil, 508 U.S. 182 (1993), the Supreme Court stated that "§ 701(a)(2) makes clear that 'review is not to be had' in those rare circumstances where the relevant statute 'is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" Id. at 191 (quoting Heckler, 470 U.S. at 830). These "rare circumstances," according to the Court's review of the relevant case law, include agency decisions not to institute enforcement proceedings, to grant reconsideration of acts based on material error, to terminate employees for national security reasons, and to allocate of funds from lump sum appropriations. Id. at 191-92. The Secretary's administrative decision in this case does not fit within this narrow category of agency actions traditionally exempt from review under § 701(a)(2).

Because we hold that the regulatory factors contained at 25 C.F.R. § 151.10 do provide "law to apply" and thus subject the Secretary's decision to judicial review under

14

the APA, we do not reach Mr. McAlpine's second argument that judicial review is available under 28 U.S.C. § 1353. Accordingly, we reverse the district court's dismissal of Mr. McAlpine's claim for lack of subject matter jurisdiction and proceed to the merits of Mr. McAlpine's claim.

## B. Review of the Secretary's Decision

Despite the district court's dismissal of Mr. McAlpine's claim for lack of subject matter jurisdiction, the court alternatively explained that even if review were available, such claim would fail on the merits. After citing the seven regulatory factors contained at 25 C.F.R. § 151.10, the court found that Mr. McAlpine failed to meet the first criteria-- that is, the existence of statutory authority for the acquisition. McAlpine v. United States, No. 95-1171-JTM, 1996 WL 91631, *2 (D. Kan. Feb. 26, 1996). The court continued:

> All of the remaining factors were considered by the BIA and the Board of Indian Appeals and found wanting. In his response to the government's motion, McAlpine cites general principles of Indian law, but provides no justification or need for the acquisition of trusteeship, no discussion of the impact upon the State of Kansas and local government, and no discussion of potential administrative or jurisdictional problems. Given this absence of any justification for accepting land in trust, the BIA and the Board of Indian Appeals acted properly in denying McAlpine's request.

Id.

The proper standard for reviewing an agency's discretionary action, such as the Secretary's decision in this case, is to determine whether the agency acted in a manner that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

15

law." 5 U.S.C. § 706(2)(A); Citizens to Preserve Overton Park, 401 U.S. at 413-14; Cotton Petroleum, 870 F.2d at 1525. The critical question in answering this inquiry is "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Citizens to Preserve Overton Park, 401 U.S. at 416; Kenai Oil & Gas, Inc., 671 F.2d at 386. "Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." Citizens to Preserve Overton Park, 401 U.S. at 416. Thus, our task is to assess whether the agency considered all of the relevant factors contained at 25 C.F.R. § 151.10 in evaluating Mr. McAlpine's 1990 request to extend trust status to his property.

Prior to arriving in federal court, Mr. McAlpine's claim proceeded through three levels of administrative review within the Department of the Interior. At the initial level, the Superintendent of the Osage Agency in Pawhuska, Oklahoma denied Mr. McAlpine's request, finding (1) that the 1871 appropriations act cited by Mr. McAlpine as statutory authority did not apply to the two tracts of land because they were not part of the diminished Osage reservation in Kansas; (2) that there was no justifiable reason to place the land in trust status; (3) that Mr. McAlpine failed to demonstrate a need to place the land in trust status; (4) that there was no impelling need for the land to be taken off the local tax rolls; and (5) that because the land was located outside the present Osage reservation in Oklahoma, the BIA office in Pawhuska was not equipped to discharge the

16

additional responsibilities of administering the two parcels of land in Kansas. Rec. vol. I, doc. 12 at 10 (Decision of the Superintendent, Osage Agency, BIA dated February 9, 1990).

On appeal of this decision, the BIA's Area Director upheld the Superintendent's denial of Mr. McAlpine's request. The Area Director noted that "[o]ur review of your application for trust acquisition and appeal took into consideration the factors listed in 25 CFR 151.10." Id., doc. 12 at 13 (Decision of the Area Director, Muskogee Area Office, BIA dated March 21, 1990). In addition to those findings made by the Superintendent, the Area Director added that "the potential exists for jurisdictional problems and land use conflicts with the local governments, which need to be resolved prior to consideration for trust acquisition." Id.

Finally, on appeal to the IBIA, the Board affirmed the denial of Mr. McAlpine's request. In doing so, the IBIA reiterated the findings of both the Superintendent and the Area Director and concluded that the decision had been made in accordance with the factors set forth in 25 C.F.R. § 151.10. McAlpine v. Muskogee Area Director, Bureau of Indian Affairs, 19 I.B.I.A. 2 (1990).

The administrative record in this case demonstrates that the agency properly considered the relevant regulatory factors then in effect in denying Mr. McAlpine's request. Both the Superintendent and Area Director considered the proposed use of the land and determined that there was no justification for placing the land in trust status and

17

removing the property from the state and local tax rolls. Both administrators also found that the BIA was not equipped or staffed to discharge the additional responsibilities arising from an off-reservation trust acquisition in the State of Kansas. Furthermore, the Area Director noted that taking the land into trust status would create jurisdictional problems and that Mr. McAlpine had presented no evidence indicating that he needed assistance in handling his affairs. On the basis of these findings, which are well-documented in the administrative record, we hold that the Secretary's denial of Mr. McAlpine's decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

### III. CONCLUSION

For the foregoing reasons, we hold that the district court did have subject matter jurisdiction to review the Secretary's decision to deny Mr. McAlpine's request to take his land into trust status. In applying the appropriate standard of review under the APA, we conclude that the Secretary's denial of Mr. McAlpine's request was not arbitrary, capricious, or an abuse of discretion. Accordingly, we AFFIRM the judgment of the district court.