**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 23, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

| | |
|---|---|
| CITY OF COLORADO SPRINGS, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> HILDA L. SOLIS, in her capacity as Secretary of the United States Department of Labor;[*] UNITED STATES DEPARTMENT OF LABOR, <br><br> Defendants-Appellees, <br><br>--- <br><br> AMALGAMATED TRANSIT UNION LOCAL 19, <br><br> Intervenor-Appellee. | No. 09-1029 |

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:07-CV-01559-LTB-KMT)**

---

Submitted on the briefs:[**]

---

[*]    On February 24, 2009, Hilda L. Solis became the Secretary of the United States Department of Labor.  In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Ms. Solis is substituted for Elaine Chao as the Appellee in this action.

[**]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of

(continued...)

Patricia K. Kelly, City Attorney, Robert J. Mack, Assistant City Attorney, Office of the City Attorney, Colorado Springs, Colorado, for the Appellant.

Tony West, Assistant Attorney General, David M. Gaouette, Acting United States Attorney, William Kanter, Robert D. Kamenshine, Attorneys, Appellate Staff Civil Division, Department of Justice, Washington, D.C., for the Appellees.

Thomas B. Buescher, Buescher, Goldhammer, Kellman & Dodge, P.C., Denver, Colorado. Jeffrey R. Freund, John M. West, Jennifer L. Hunter, Daniel A. Zibel, Bredhoff & Kaiser, P.L.L.C., Washington, D.C., for Intervenor-Appellee.

---

Before **TACHA**, **ANDERSON**, and **EBEL**, Circuit Judges.

---

**EBEL,** Circuit Judge.

---

Section 13(c) of the Urban Mass Transportation Act of 1964 ("UMTA"), now codified at 49 U.S.C. § 5333(b), requires state and local governments seeking federal financial assistance for transit operations to have in place "fair and equitable" provisions for the protection of employees. Each time an applicant requests funds from the Federal Transit Administration ("FTA") under UMTA, the Secretary of Labor must certify that § 13(c) is satisfied.

Since 1981, the City of Colorado Springs, Colorado ("the City") has been a party to a labor agreement with Amalgamated Transit Union, Local 19 ("the Union") pursuant to § 13(c) ("the Agreement"). The City wishes to be relieved of

---

[**]*(...continued)*
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

provisions of the Agreement that it contends go beyond § 13(c)'s requirements. In connection with a certain grant application, the DOL rejected the City's objections to the Agreement and certified the Agreement for purposes of that grant. The City then brought suit under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. The district court affirmed, *see City of Colorado Springs v. Chao*, 587 F. Supp. 2d 1185, 1197 (D. Colo. 2008), and the City appeals. We have jurisdiction under 28 U.S.C. § 1291. Concluding that the DOL did not act arbitrarily or capriciously in rejecting the City's objections, we AFFIRM.

## I. Background

### A. The Urban Mass Transportation Act

Under UMTA, governmental entities may seek federal financial assistance for acquiring, improving, and/or running public mass-transit systems. Congress enacted UMTA to respond to "the increasingly precarious financial condition of a number of private transportation companies across the country" because "it feared that communities might be left without adequate mass transportation." *Jackson Transit Auth. v. Local Div. 1285*, 457 U.S. 15, 17 (1982). "At the same time, however, Congress was aware that public ownership might threaten existing collective-bargaining rights of unionized transit workers employed by private companies." *Id.* In response to this concern, Congress included § 13(c) in UMTA "[t]o prevent federal funds from being used to destroy the

-3-

collective-bargaining rights of organized workers." *Id.* Thus, § 13(c) "sets forth minimal standards that a [governmental] transit authority must satisfy before it may receive federal funding." *Burke v. Utah Transit Auth.*, 462 F.3d 1253, 1258 (10th Cir. 2006).

Specifically, § 13(c) requires that "the interests of employees affected by the assistance shall be protected under arrangements the Secretary of Labor concludes are fair and equitable." 49 U.S.C. § 5333(b)(1). Such arrangements must include six specified types of provisions, including provisions for the continuation of collective bargaining rights and provisions protecting employment rights. *Id.* § 5333(b)(2). Agreements entered into between governmental bodies and unions to satisfy § 13(c) commonly are called 13(c) agreements. The Agreement is the City's 13(c) agreement. It is undisputed that the Agreement contains the provisions § 13(c) requires. *City of Colo. Springs*, 587 F. Supp. 2d at 1192-93.

B.  Certification of 13(c) Agreements

Each time a governmental body seeks financial assistance from the FTA under UMTA, the DOL must certify to the FTA that § 13(c) is satisfied. Effective January 8, 1996, the DOL implemented the current administrative guidelines for issuing such certifications (the "Guidelines"). *See* 29 C.F.R. §§ 215.1-215.8 (2007); 60 Fed. Reg. 62964-69 (Dec. 7, 1995). Where employees are represented by a labor organization, as in this case, 29 C.F.R. § 215.3 controls.

-4-

Once the DOL receives an application for FTA assistance and a request for certification of employee protective arrangements, it refers the application to the labor organization and notifies the applicant of the referral. *Id.* § 215.3(b). "For applicants with previously certified arrangements, the referral will be based on those terms and conditions." *Id.* § 215.3(b)(2). "Following referral and notification . . . parties will be expected to engage in good faith efforts to reach mutually acceptable protective arrangements through negotiation/discussion within the [regulatory] timeframes." *Id.* § 215.3(c). Within fifteen days of the referral and notification, parties may submit objections to the referred terms. *Id.* § 215.3(d)(1). "The parties are encouraged to engage in negotiations/discussions during this period with the aim of arriving at a mutually agreeable solution to objections any party has to the terms and conditions of the referral." *Id.*

If a party objects, the DOL has ten days from the response deadline to determine whether the objection is "sufficient." *Id.* § 215.3(d)(2)(i). Under the regulations, the DOL

> will consider an objection to be sufficient when:
>
> (i) The objection raises material issues that may require alternative employee protections under 49 U.S.C. § 5333(b); or
>
> (ii) The objection concerns changes in legal or factual circumstances that may materially affect the rights or interests of employees.

*Id.* § 215.3(d)(3).

If the DOL determines that there are no sufficient objections, it will issue a

-5-

certification. *Id.* § 215.3(d)(5). But if the DOL determines that an objection is sufficient, it will direct the parties to engage in negotiations regarding the issue. *Id.* § 215.3(d)(6). If such negotiations produce an agreement that, in the DOL's view, satisfies § 13(c), then the certification will be based on the terms of the parties' agreement. *Id.* § 215.3(d)(7). If the negotiations are not successful, the DOL will issue an interim certification based on terms and conditions that it has set which are no less protective than the terms and conditions included in the referral. *Id.* Even after issuing an interim certification, however, the DOL will oversee further proceedings to resolve the dispute. *Id.* § 215.3(e). Ultimately the DOL will issue a final determination, based either on an agreement by the parties or the DOL's resolution of the dispute. *Id.* § 215.3(g).

In adopting the Guidelines, the DOL departed from its previous practice. The prior guidelines did not require objections to be "sufficient" for the DOL to oversee negotiations of a new 13(c) agreement. *See* 43 Fed. Reg. 13558-13560 (Mar. 31, 1978) (discussing guidelines effective May 1, 1978). Instead, we are informed, any objection would trigger renegotiations.

C. The Administrative Proceedings

In April 2007, in an application assigned grant number CO-04-0021, the City applied for FTA assistance to purchase two new buses to replace aging vehicles. The Agreement has no termination provision, so it was still in effect when the City applied for grant CO-04-0021. Noting that "[t]he Department has

previously certified protective arrangements that are appropriate for application to the instant project," the DOL referred the application and the Agreement to the Union. Aplt. App. at 242. Both the City and the Union filed timely objections.

The City objected to the following five provisions of the Agreement: (1) a provision requiring interest arbitration; (2) a clause regarding the filling of new jobs created as a result of a federal project; (3) a provision that any new terms must have economic value equal to or greater than existing terms; (4) a paragraph that provides guarantees of continued employment in the event the transit system is acquired; and (5) a paragraph concerning renegotiation of unenforceable terms, which omitted the City as a negotiating party. Citing numerous cases and prior DOL rulings, the City contended that the first four provisions were not legally required to satisfy § 13(c). It further argued that the interest-arbitration provision was contrary to Colorado law. Thus, the City urged the DOL to conclude that there were material issues requiring alternative employee protections and that there had been changes in legal or factual circumstances, which would allow the City to force renegotiation of the provisions using the § 215.3 procedure.

In its objection, the Union argued that a recent Colorado state-court order "raised material issues relative to the rights and interests of the Local 19-represented employees." Aplt. App. at 250. The Union indicated the court had held that the City was not obligated to arbitrate differences between it and the Union. "As thus construed by the state court, then, the 1981 Agreement fails to

satisfy the minimum requirements of the [UMTA], which the Department has long concluded mandate the availability of third-party arbitration over any Section 13(c) disputes." *Id.*

By letter dated May 17, 2007, the DOL concluded that neither the City's nor the Union's objections were sufficient because neither party had made a "sufficient showing of material issues or changes in legal or factual circumstances." *Id.* at 314, 315. With regard to the City's objection regarding the interest-arbitration provision, the DOL added, "should the Colorado Courts, at some time in the future, rule that interest arbitration is not available to the private sector employees of the management company represented by ATU Local 19 or that the interest arbitration provision of the City's 13(c) agreement is unenforceable upon the City, the Department will consider the circumstances then presented." *Id.* at 315. Accordingly, the DOL issued its § 13(c) certification for grant CO-04-0021.

On July 24, 2007, the City wrote to the DOL, indicating that it objected to the May 17 decision and certification. The City informed the DOL that it was filing a complaint under the APA in the federal district court to challenge the decision. The City then set forth a proposal regarding the handling of future grants during the pendency of the lawsuit. That proposal included a request that "the Department rescind its final certification for FTA grant CO-04-0021 and issue an interim certification for that grant on the basis of" certain standard

§ 13(c) terms the DOL has promulgated, so that grant CO-04-0021 and future grants would proceed under those standard terms during the pendency of the lawsuit. *Id.* at 321. By letter dated July 30, 2007, the Union opposed the City's request. The DOL responded by letter dated August 16, 2007. Rejecting the City's proposal, the DOL stated:

> In order for objections to be deemed sufficient to warrant negotiations regarding previously certified protective arrangements, parties' objections must raise "material issues that may require alternative employee protections" under the statute, 29 C.F.R. 215.3(d)(3)(i), or "changes in legal or factual circumstances that may materially affect the rights or interests of employees[,]" 29 C.F.R. 215.3(d)(3)(ii).
>
> . . . Before the Department directs the negotiation of a particular term or provision under 29 C.F.R. 215.3(d)(3), a party must show that a particular provision no longer meets the statutory requirements for employee protection, 49 U.S.C. 5333(b)(2), and therefore an alternative provision must be substituted in order for the arrangement to meet those statutory criteria. . . . Under either 29 C.F.R. 215.3(d)(3)(i) or (ii), an objection is considered sufficient only if it concerns a provision of a previously certified protective arrangement that no longer meets the statutory criteria of 49 U.S.C. 5333(b)(2). Thus, an objection is not considered sufficient under either standard when it is based on an assertion that the provision exceeds the level of protections required by the statute. These guidelines, as applied by the Department, properly recognize that negotiated protective arrangements may contain terms not specifically required by the statute. Because such arrangements are the product of bilateral, or in some cases multilateral, negotiations between the parties for which mutual consideration was provided at the time of initial negotiations, the Department will not direct unnecessary negotiation of one provision extracted from the entire agreement, a result that would upset the equilibrium struck in the agreement as a whole.

*Id.* at 326.

D.  The District Court Proceedings

Contemporaneously with sending its July 24 letter to the DOL, the City filed its complaint in the district court.  The complaint alleged that the May 17 decision was arbitrary and capricious because the DOL failed to explain the decision; the DOL failed to follow its own precedents, thereby treating the City differently than other regulated entities; and the decision imposed interest arbitration on the City, in violation of the Colorado Constitution.  The complaint also challenged as arbitrary and capricious the DOL's failure to relieve the City of each of the other clauses the City considered excessive, as well as the clause excluding the City from renegotiations.  Further, the complaint alleged that the decision was arbitrary and capricious because the DOL "misused the Guidelines to avoid the application of existing law."  *Id.* at 30.  The City requested a declaratory judgment and injunctive relief.

The district court allowed the Union to intervene as a party in the action.  Thereafter, the parties filed a number of documents concerning the contents of the administrative record.  Ultimately, the district court allowed the parties to supplement the record with letters from the Union and the City that predated the May 17 decision and a copy of the Agreement.  But the court granted the City's motion to strike the July 24, July 30, and August 16 letters from the administrative record.  The court stated that the letters clearly were not among the documents and materials the DOL considered in connection with the May 17

denial, and rejected the DOL's contention that they were part of the whole administrative record. Instead, the court held that the July 24 letter was not a motion for reconsideration, and that the August 16 letter "is simply a *post hoc* rationalization for [the DOL's] May 17, 2008 decision, developed and generated in response to the allegations contained in the Complaint." *Id.* at 721.

After briefing, the district court reached the merits of the parties' claims. The court held that the four provisions identified by the City clearly exceed § 13(c)'s requirements. *City of Colo. Springs*, 587 F. Supp. 2d at 1192. But in light of § 13(c)'s narrow purpose – protecting transit workers' collective bargaining rights – the DOL was not required to invalidate overly protective terms in a 13(c) agreement. *See id.* "Neither the statute nor the Guidelines provide a means for a transit entity to modify the terms of a Section 13(c) agreement unless the disputed terms materially impact employee[s'] collective bargaining rights." *Id.* The district court further held that the DOL's explanation for its decision was adequate for review, and that the DOL did not impermissibly depart from its precedents in denying the City's objections. *See id.* at 1194-95. "While Colorado Springs points me to past decisions showing the objected-to provisions exceed the statutory minimum, the city points me to no prior decisions in which DOL determined that an objection to provisions that exceed the statutory minimum should–without more–be considered 'sufficient' under the Guidelines." *Id.* at 1195. Concluding that the DOL's decision was not arbitrary and capricious,

-11-

the district court affirmed.  *See id.* at 1197.  The City appeals.

## II.  Analysis

### A.  <u>Reviewability Under the APA</u>

Both appellees allege that the May 17 decision is judicially unreviewable.
The Union argues that review is not available under the APA because the decision
is one "committed to agency discretion by law."  *See* 5 U.S.C. § 701(a)(2).  And
the DOL argues that the decision was not a "final agency action" as the APA
requires.  *See id.* § 704.  We address each argument in turn.

1. *The Decision is Not Unreviewable as a Decision "Committed to Agency
   Discretion By Law."*

The APA does not apply "to the extent that . . . agency action is committed
to agency discretion by law."  5 U.S.C. § 701(a)(2).  Invoking this subsection, the
Union suggests that the DOL's decision is unreviewable because the
determination whether particular protective arrangements are "fair and equitable"
is committed to agency discretion by law.

The Supreme Court has recognized that the APA "embod[ies] a basic
presumption of judicial review."  *Lincoln v. Vigil*, 508 U.S. 182, 190 (1993)
(quotation omitted).  But that presumption can be rebutted; "even where Congress
has not affirmatively precluded review, review is not to be had if the statute is
drawn so that a court would have no meaningful standard against which to judge
the agency's exercise of discretion."  *Heckler v. Chaney*, 470 U.S. 821, 830

(1985).  "In such a case, the statute ('law') can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely."  *Id.*  "In short, there is no judicial review of an agency decision where there is no law for the court to apply."  *Thomas Brooks Chartered v. Burnett*, 920 F.2d 634, 642 (10th Cir. 1990).[1]

The Union relies on pre-Guidelines cases concluding that § 701(a)(2) precludes review of the Secretary's decision that protective arrangements are "fair and equitable."  *See Local Div. 732 v. Metro. Atlanta Rapid Transit Auth.*, 667 F.2d 1327, 1343 (11th Cir. 1982); *Kendler v. Wirtz*, 388 F.2d 381, 383 (3d Cir. 1968); *City of Macon v. Marshall*, 439 F. Supp. 1209, 1223 (M.D. Ga. 1977); *see also Amalgamated Transit Union Int'l v. Donovan*, 767 F.2d 939, 944-45 n.7 (D.C. Cir. 1985) (distinguishing *Kendler* and *City of Macon*).  But it is the Guidelines which underlie the City's appeal.  "[W]hile the determination of whether there is 'law to apply' often focuses on the controlling statute, we have previously recognized that the 'law to apply' can also be derived from the

---

[1]    "The 'commitment to agency discretion' exception is not limited to cases in which there is 'no law to apply.'  'Whether and to what extent a particular statute precludes review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved.'"  *Am. Bank, N.A. v. Clarke*, 933 F.2d 899, 902 (10th Cir. 1991) (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984)).  We do not address these additional factors, however, as the parties focus on the "no law to apply" test, and it does not appear that these factors counsel in favor of applying § 701(a)(2) in this case.

-13-

agency's regulations where the agency is acting pursuant to those regulations."

*McAlpine v. United States*, 112 F.3d 1429, 1433 (10th Cir. 1997); *see also*

*Thomas Brooks Chartered*, 920 F.2d at 642 ("Affirmative agency action is . . .

reviewable where the agency purports to act pursuant to its own rules, rather than

a statute. The failure of an agency to follow its own regulations is challengeable

under the APA."). While acknowledging that "[t]here is no statutory authority to

issue regulations under section 5333(b)," the DOL has stated that "[t]he

guidelines . . . are intended to be binding." 60 Fed. Reg. 62968; *see also* 5 Jacob

A. Stein et al., *Administrative Law* § 43.01 (2007) ("[W]hen an agency issues a

binding interpretation of its organic statute, it has issued a rule, regardless of

whether or not the agency calls it a rule."). In light of the Guidelines, the

Supreme Court's decision in *Citizens to Preserve Overton Park, Inc. v. Volpe*,

401 U.S. 402 (1971), provides the most appropriate authority for measuring

reviewability in this appeal.

In *Overton Park*, the Supreme Court held that § 701(a)(2) did not preclude

judicial review of the Secretary of Transportation's decision to authorize the

expenditure of federal funds to construct a highway through a park. *Id.* at 410.

Noting that the agency discretion provision "is a very narrow exception," the

Court held that the provision is applicable only in "those rare instances where

'statutes are drawn in such broad terms that in a given case there is no law to

apply.'" *Id.* (quoting S. Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)). Because

-14-

the applicable statutes set forth "clear and specific directives" to guide the Secretary's discretionary decision, there was "'law to apply'" for the purposes of judicial review. *Id.* at 411-13. Where appropriate, this court has relied on *Overton Park*'s rationale in declining to apply § 701(a)(2). *See, e.g., Colo. Envtl. Coal. v. Wenker*, 353 F.3d 1221, 1232-33 (10th Cir. 2004) (per curiam); *Payton v. U.S. Dep't of Agric.*, 337 F.3d 1163, 1168 (10th Cir. 2003); *McAlpine*, 112 F.3d at 1433; *Thomas Brooks Chartered*, 920 F.2d at 642-43.

There is "law to apply" in this case because the Guidelines supply "clear and specific directives" to guide the DOL in determining whether an objection is sufficient. *See* 29 C.F.R. § 215.3(d)(3)(i) & (ii). We conclude that § 701(a)(2) does not preclude review.

2. *The May 17, 2007, Letter Was Final for Purposes of Judicial Review.*

The APA provides for judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The DOL argues that the May 17 decision was not a "final agency action" because the City, through its July 24 letter, sought reconsideration of the decision at the same time it filed its complaint in the district court. Therefore, the DOL contends, when the complaint was filed, the decision was not final and ripe for judicial review.

Section 704 states: "Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application . . . for any form of

-15-

reconsideration . . . ." But this provision does not mean that a petition for reconsideration cannot affect the finality of an agency action. "That language has long been construed by this and other courts merely to relieve parties from the *requirement* of petitioning for rehearing before seeking judicial review . . . but not to prevent petitions for reconsideration that are actually filed from rendering the orders under reconsideration nonfinal." *I.C.C. v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 284-85 (1987). Accordingly, in most circumstances a case is not ripe for judicial review "where a petition for reconsideration has been filed within a discretionary review period specifically provided by the agency." *Id.* at 279.

> As construed in *Locomotive Engineers* . . . the APA . . . embrace[s] a tolling rule: The timely filing of a motion to reconsider renders the underlying order nonfinal for purposes of judicial review. In consequence, pendency of reconsideration renders the underlying decision not yet final, and it is implicit in the tolling rule that a party who has sought rehearing cannot seek judicial review until the rehearing has concluded.

*Stone v. I.N.S.*, 514 U.S. 386, 392 (1995).

But the tolling rule is not applicable in this case because the DOL has not established a rehearing or reconsideration procedure for § 13(c) certifications. Thus, there is no "discretionary review period specifically provided by the agency" of which the City could avail itself. Further, as the district court noted in granting the City's motion to strike, it is not clear that the July 24 letter intended to seek reconsideration of the May 17 decision, as opposed to suggesting a procedure for moving forward during the pendency of the City's challenge to that

-16-

decision. Accordingly, we conclude that the DOL's May 17 decision was a "final agency action" subject to judicial review.

B. Standard of Review

"We take an independent review of the agency's action and are not bound by the district court's factual findings or legal conclusions." *Utah Envtl. Cong. v. Bosworth*, 439 F.3d 1184, 1188 (10th Cir. 2006) (quotation omitted). Informal agency action is reviewed under the standard set forth in 5 U.S.C. § 706(2)(A), requiring agency action be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See Overton Park*, 401 U.S. at 414; *McAlpine*, 112 F.3d at 1436. "The critical question in answering this inquiry is 'whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *McAlpine*, 112 F.3d at 1436 (quoting *Overton Park*, 401 U.S. at 416). "'Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.'" *Id.* (quoting *Overton Park*, 401 U.S. at 416).

C. Merits Analysis

The City contends that the certification decision was arbitrary and capricious because (1) the DOL failed to follow its precedent and did not explain its departure from prior decisions; (2) the DOL's decision "provided absolutely no discussion, explanation, or rationale" for its conclusion that the City's objections

were not sufficient, Aplt. Br. at 48; and (3) the Guidelines should not be interpreted to require, for an objection to be "sufficient," that the objection address employee protections, rights, or interests.[2]

1. *The DOL Did Not Impermissibly Fail to Follow Its Precedent.*

The City argues that the Agreement's provisions concerning interest arbitration, new jobs, minimum economic value, and successor employers are not required by § 13(c). In its administrative objections, the City cited numerous proceedings in which the DOL upheld objections to, and allowed parties to renegotiate, such provisions. The City complains that the DOL's failure to deem the City's objections "sufficient" resulted from a failure to follow such precedent, and the DOL then compounded its offense by failing to explain why it was departing from its precedent. Thus, the City contends, the DOL is requiring the City to continue shouldering burdensome obligations from which it has relieved other municipalities. For these reasons, the City argues that the DOL's decision was arbitrary and capricious.

As the district court recognized, it appears that the City is correct that § 13(c) does not require the provisions to which the City objects. *City of Colo. Springs*, 587 F. Supp. 2d at 1192. Further, we agree with the City that

---

[2]    The City frames its issues as challenging the district court's opinion. But as set forth above, our task is to review the DOL's decision independently. Thus, we have approached the issues as focusing on the DOL's decision rather than the district court's opinion.

"[a]gencies are under an obligation to follow their own regulations, procedures, and precedents, or provide a rational explanation for their departures." *Big Horn Coal Co. v. Temple*, 793 F.2d 1165, 1169 (10th Cir. 1986) (quotation omitted); *see also Midwestern Transp., Inc. v. Interstate Commerce Comm'n*, 635 F.2d 771, 777 (10th Cir. 1980) ("[T]he court must require the agency to adhere to its own pronouncements or explain its departure from them; an agency must apply criteria it has announced as controlling or otherwise satisfactorily explain the basis for its departure therefrom."). But the other basic premises of the City's argument are flawed for at least two reasons.

First, the DOL did not depart from its applicable precedents without explanation. With only one exception, the DOL decisions upon which the City relies were issued before the adoption of the Guidelines. As discussed above, in lieu of the prior procedure, the Guidelines implemented a requirement that objections be "sufficient" to trigger the DOL-overseen negotiation process. In light of the adoption of the Guidelines, and the implementation of a new, more stringent standard, the DOL was not necessarily bound by decisions rendered under the more lenient standard. And given the obvious change in the legal landscape, the DOL is not required to provide a particularized explanation for its failure to follow pre-Guidelines decisions. *See Midwestern Transp.*, 635 F.2d at 777 (holding that any departure from prior criteria was "adequately supported and justified" by newly enacted statute and policy).

-19-

The City did cite one post-Guidelines decision in which the DOL directed negotiations over interest dispute procedures because an interest arbitration procedure was not enforceable under state law. *See* Metro. Tulsa Transit Auth., No. OK-03-0022 (Dep't of Labor Nov. 4, 2003) (final certification). But the DOL's May 17 letter effectively distinguished that precedent by indicating it was not convinced that interest arbitration was unavailable under Colorado law.

Second, the City fails to recognize the narrow scope of the § 13(c) certification procedure. As the DOL states on appeal,

> the City seeks to enlist DOL in the City's effort to extricate itself from provisions to which the City agreed when, in 1981, it concluded an agreement to which the parties did not attach an expiration date. Apparently, the Union has been unwilling to renegotiate them. And, understandably, the City is frustrated.

DOL Aplee. Br. at 30. But as the district court recognized, "[t]he purpose of Section 13(c) is not . . . to invalidate overly-protective terms in a Section 13(c) agreement, but rather 'to prevent federal funds from being used to destroy the collective-bargaining rights of organized workers.'" *City of Colo. Springs*, 587 F. Supp. 2d at 1192 (quoting *Jackson Transit Auth.*, 457 U.S. at 17). To that end, § 13(c) establishes "minimal standards," *Burke*, 462 F.3d at 1258, and does not concern itself with other provisions to which the parties might agree. It is undisputed that the Agreement satisfies § 13(c)'s requirements. *City of Colo. Springs*, 587 F. Supp. 2d at 1192. Once the DOL determines § 13(c) is satisfied, its role is at an end.

-20-

We are not convinced by the City's vigorous complaints that it has no remedy other than the certification procedure because it is prohibited from renegotiating the Agreement outside of the Guidelines process. We perceive nothing in the Guidelines that precludes parties from renegotiating a 13(c) agreement. In fact, it appears that the Guidelines encourage parties to negotiate their own arrangements wherever possible. *See* 60 Fed. Reg. 62964 ("The new guidelines continue to encourage local negotiations or discussions for the development of employee protection terms."); *see also* 29 C.F.R. § 215.3(d)(1) (encouraging parties to negotiate during the objection period "with the aim of arriving at a mutually agreeable solution to objections any party has to the terms and conditions of the referral"); *id.* § 215.3(g) (providing for substitution of terms and conditions if the parties subsequently reach agreement). And the DOL informs us that parties are free to renegotiate 13(c) agreements outside of the Guidelines context.

Moreover, it is not apparent to us that the Guidelines would foreclose any other alternative the City may have for relieving itself of obligations that it no longer wishes to fulfill. The question of the City's potential remedies is not before us, and we are not deciding that issue. But just as we see nothing in the Guidelines precluding the City from vigorously seeking renegotiation under the threat of foregoing any further federal assistance (which, presumably, would negatively affect the Union as well as the City), we see nothing precluding the

-21-

City from pursuing state-law theories of relief in state court. *See Jackson Transit Auth.*, 457 U.S. at 23-24 ("Section 13(c) evinces no congressional intent to upset the decision in the National Labor Relations Act to permit state law to govern the relationships between local governmental entities and the unions representing their employees. . . . A consistent theme runs throughout the consideration of § 13(c): Congress intended that labor relations between transit workers and local governments would be controlled by state law.").[3]

Contrary to the City's protest, the DOL has not improperly imposed perpetual burdensome requirements on the City. *See Burke*, 462 F.3d at 1258 (quoting *Donovan*, 767 F.2d at 947, for the proposition that "Section 13(c) does not prescribe mandatory labor standards for the states, but rather dictates the terms of federal mass transit assistance. States are free to forego such assistance and thus to adopt any collective bargaining scheme they desire."). The DOL simply restricted itself to its proper, limited role with regard to § 13(c) certifications.

---

[3] The Supreme Court of Colorado has stated that "the majority rule is that an *in perpetuity* provision of a contract to which a municipal corporation is a party is ultra vires and unenforceable," and that "[c]ontractual obligations can be avoided on the ground of impossibility of performance or, perhaps, hardship." *Cherokee Water Dist. v. Colorado Springs*, 519 P.2d 339, 340, 341 (Colo. 1974), *superceded by statute as stated in Bennett Bear Creek Farm Water & Sanitation Dist.*, 928 P.2d 1254, 1264 (Colo. 1996).

2. *The DOL Was Not Required to Provide Additional Discussion.*

The City further argues that the DOL's decision was arbitrary and capricious because it did not provide an adequate explanation for the denial. Particularly, the City contends that the DOL did not explain its decision so that a reviewing court can discern its rationale.

In holding that a court "must judge the propriety of [agency] action solely by the grounds invoked by the agency," the Supreme Court also stated, "[i]f the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). The APA, however, does not require formal findings in informal adjudicatory proceedings. *See Overton Park*, 401 U.S. at 417. Rather, the APA states, "[e]xcept in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial." 5 U.S.C. § 555(e). Thus, while the DOL was required to provide some written explanation of its reasons for denying the City's objection, such explanation need only conform to the APA's requirements. *See Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 653 (1990) (applying to informal adjudications the rule of *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council*, 435 U.S. 519 (1978), that "when the Due Process Clause is not implicated and an agency's governing statute contains no specific procedural mandates, the APA establishes the maximum procedural

-23-

requirements a reviewing court may impose on agencies"). "[T]he agency's statement of reasons need not include detailed findings of fact but must inform the court and the petitioner of the grounds of decision and the essential facts upon which the administrative decision was based." *Citizens' Comm. to Save Our Canyons v. U.S. Forest Serv.*, 297 F.3d 1012, 1035 (10th Cir. 2002) (quotation omitted).

The DOL's May 17 denial admittedly was terse, but it was sufficient for review. It identified the relevant legal criteria and the DOL's determination that the City's objections did not meet them. And with regard to the interest-arbitration issue, it added an additional explanation of the reasons underlying its decision. "While we may not supply a reasoned basis for the agency's action that the agency itself has not given, we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974) (citation omitted); *see also Citizens' Comm. to Save Our Canyons*, 297 F.3d at 1034-35.

Moreover, it appears that, even if the May 17 letter and the administrative record were inadequate for judicial review, in these circumstances such inadequacy would not justify reversing the district court's decision. The Supreme Court has held that, where an agency decision and administrative record is insufficient for judicial review, a court may require the agency to explain its

decision. *See Camp v. Pitts*, 411 U.S. 138, 142-43 (1973) (per curiam) ("If . . . there was such failure to explain administrative action as to frustrate effective judicial review, the remedy was not to hold a *de novo* hearing but, as contemplated by *Overton Park*, to obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary."); *Overton Park*, 401 U.S. at 420 (noting that the district court could take testimony or could allow the Secretary to make formal findings). In the August 16 letter, which was issued by the same DOL decisionmaker close to the time of the initial decision, the DOL provided a more detailed explanation why it determined that the City's objections were not sufficient. Accordingly, to the extent this court were to conclude that the May 17 letter and the administrative record lacked sufficient information to permit judicial review, it appears that the August 16 letter would provide a basis for judicial review.[4]

3. *The DOL Did Not Err in Interpreting 29 C.F.R. § 215.3(d)(3).*

Finally, the City argues that § 215.3(d)(3) should not be interpreted to

---

[4]    We acknowledge that, upon the City's motion, the district court ordered the August 16 letter stricken from the administrative record, along with the July 24 letter and July 30 response. To the extent the August 16 letter may facilitate judicial review, however, we have noted that one justification for accepting extra-record evidence is "that the agency action is not adequately explained and cannot be reviewed properly without considering the cited materials." *Am. Mining Congress v. Thomas*, 772 F.2d 617, 626 (10th Cir. 1985).

require, for an objection to be "sufficient," that the objection involve employee

protections, rights, or interests.[5] The City contends that a transit agency clearly

has the right to object to the certification of a 13(c) agreement, *see* 29 C.F.R.

§ 215.3(d)(1), and that the DOL has indicated that "[t]he definition [of

"sufficient"] does not favor either party over the other," 60 Fed. Reg. 62965.

"Review of an agency's interpretation of its own regulations is substantially

deferential." *St. Anthony Hosp. v. U.S. Dep't of Health & Human Servs.*,

309 F.3d 680, 691-92 (10th Cir. 2002) (citing *Thomas Jefferson Univ. v. Shalala*,

512 U.S. 504, 512 (1994)).

> "[T]he agency's interpretation must be given controlling weight
> unless it is plainly erroneous or inconsistent with the regulation.  In
> other words, we must defer to the Secretary's interpretation unless an
> alternative reading is compelled by the regulation's plain language or
> by other indications of the Secretary's intent at the time of the
> regulation's promulgation."

*Id.* at 692 (quoting *Thomas Jefferson Univ.*, 512 U.S. at 512).

The Guidelines provide:

The Department of Labor will consider an objection to be sufficient
when:

---

[5]    In its opening brief, the City does not challenge the DOL's adoption of the
Guidelines or the fact that the DOL employed the Guidelines in this case, but
instead challenges the interpretation of the Guidelines as such interpretation led to
the result in this case.  To the extent the City's reply brief asserts that the
Guidelines are legally invalid, we note that arguments not raised in the opening
brief are waived.  *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984
n. 7 (10th Cir. 1994).

(i) The objection raises material issues that may require alternative employee protections under 49 U.S.C. 5333(b); or

(ii) The objection concerns changes in legal or factual circumstances that may materially affect the rights or interests of employees.

29 C.F.R. § 215.3(d)(3).  The plain language of the Guidelines is solicitous toward employees, specifying "alternative *employee* protections" in § (d)(3)(i) and "changes . . . that may materially affect the rights or interests of *employees*" in § (d)(3)(ii) (emphasis added).  Accordingly, we conclude that an interpretation that emphasizes employee protections, interests, and rights is not plainly erroneous or inconsistent with the Guidelines.  This is particularly true in light of § 13(c) itself, which was included in UMTA specifically to protect employees' rights and interests.  *See Jackson Transit Auth.*, 457 U.S. at 17.

## III.  Conclusion

The City's arguments have not persuaded us that DOL's May 17, 2007, decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The judgment of the district court is AFFIRMED.